227 So.2d 432

**Jerome GORE**

v.

**STATE.**

**6 Div. 348.**

Court of Appeals of Alabama.

[Transferred to 6 Div. 2. Court of Criminal Appeals of Alabama].

Aug. 19, 1969.

Rehearing Denied by Court of Appeals Sept. 9, 1969.

Fred Blanton, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

I

This appeal was filed here January 15, 1968. Appellant's trial counsel was also appointed by the circuit court to represent

Gore on appeal. This first attorney filed nothing in this court.

On June 3, 1969, the trial judge, in order to obviate a reversal under the strictures of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493; and Caton v. Alabama, 392 U.S. 645, 88 S.Ct. 2298, 20 L.Ed.2d 1354, appointed Honorable Fred Blanton. Mr. Blanton has promptly filed an expert brief: he argues that the trial below was a farce because Gore's appointed trial counsel was incompetent (or inadequate.)

As to the appellate phase of this case (before Mr. Blanton's entry), the thrust of such argument would be cogent. Had the appellate appointment come from our Presiding Judge, we entertain no doubt that the indifference (in promising and then failing to file a brief) of the first lawyer would have merited our citing him to show cause against punishment for contempt.

However, as we wrote the trial judge on the occasion of his appointing Mr. Blanton, "It would be an anomalous situation to penalize the State solely for a lawyer's lethargy."

 In other words, whatever moral views we might have as to the failure of Gore's former lawyer to file a brief on appeal, these should not, per se and alone, color our review of the trial record. Under Code 1940, T. 15, § 389, we treat appeals untinctured by presumptions. Gore is the man who faced indictment; his lawyer's delict is another affair.

II

The February 1966 Grand Jury of Jefferson County indicted Gore for rape. On conviction, at the discretion of the jury, this crime is punishable by death or imprisonment for not less than ten years. Code 1940, T. 14, § 395. Gore's petty jury gave him fifteen.

On a Friday night in December 1965, the prosecutrix and her husband visited with friends and there indulged in pre-Christmas cheer. They were walking home at between 1:30 and 2:00 o'clock in the morning when the defendant and a companion, Johnny Jemison, grabbed the husband, led him and the wife with a drawn knife into a dark spot back of a church. While Jemison restrained the husband, Gore ravished the wife.

The husband broke away and set up the hue and cry. The defendant and Jemison took the wife into an old abandoned car on a nearby college campus. There the defendant again forced himself upon her.* Later they took her to an elementary school. There, toward morning, both men had carnal knowledge of her.

The defendant took the stand. He denied the first episode to which the prosecutrix and her husband had testified. As to the campus and school house, he testified these were consensual hugger-muggeries— done more at the behest of the woman than springing from his enticed libido.

On cross examination, the defendant admitted he had been convicted of a crime involving moral turpitude.[1] Also, it was brought out that shortly after the alleged offense Gore left Birmingham and went to Boston where he was arrested in August 1966. This was relevant as to Gore's entertaining a feeling of guilt. Tiner v. State, 279 Ala.App. 126, 182 So.2d 859(12).

After the State rested, the defendant's counsel made no motion to exclude the evidence. Nor did he ask for the affirmative charge or any other charge. Neither did he take any exception to the court's oral charge.

Finally, as newly appointed counsel points out, no motion for new trial was filed. Hence, there were very few points at which rulings adverse to the defendant were had below.

1. Code 1940, T. 7, § 434.

## III

Trial tactics should not be enforced with speculative wisdom ex post facto veredicto.

Moreover, we must also remember that trial judges, in capital cases, are potentially under stricter rules than in non-capital felonies. This because under the Automatic Appeal Act, if there is a conviction with electrocution, review is by a more lenient standard to reverse than prevails in other appeals.[2]

While Gore, on appeal, is only entitled to the review accorded by Code 1940, T. 15, § 389, nevertheless, before verdict the trial judge was aware that if Gore were to be sentenced to death: (1) appeal was mandatory; and (2) the standard of review was rigorous under § 10 of the 1943 Act.

■ Reviewing the instant record, we note specifically that Gore's trial counsel made no attempt to confine the State's proof to but a single instance of sexual intercourse committed by Gore upon the person of the prosecutrix. Reversing this Court in Mikell v. State, 242 Ala. 298, 5 So.2d 825, Gardner, C. J., aphoristically premised his reasoning on, "* * * rape is not a continuous offense * * *."

However, even if evidence of other offenses had been objected to, we consider that testimony thereof, as here elicited, would have been admissible as an exception to the rule in State v. Wisdom, 8 Port. 511. See Funderburk v. State, 145 Ala. 661, 39 So. 672 (in Southern Reporter only).

We reach this conclusion because (1) the testimony tended to explain why the prosecutrix was hindered in making complaint; and (2) it shed light on. Gore's further need for violence or duress. Both of these aspects bear on the issue of consent vel non. *Mikell*, supra, (4). We see no need to enter deeper into the thicket of similar fact evidence discussed in Brasher v. State, 249 Ala. 96, 30 So.2d 31.

## IV

■ Basically, as we comprehend the duty of counsel, retained or appointed, in a criminal trial, it is to prevent the trial from being or appearing to be "a farce or a mockery of justice." Rivera v. United States, 9 Cir., 318 F.2d 606.

Moreover, on this direct appeal we are reviewing the trial of an indicted defendant and only incidentally the conduct of his lawyer. Hence, ordinarily such matters as pre-trial conferences, investigations and advice are not directly brought into issue.

We quote from McGee, Defense of Indigents—Current Status, 29 Ala. Lawyer 408, at 425–426 (omitting footnotes):

"Another problem concerns the rash of claims of convicted indigents that assigned counsel was incompetent or ineffective. These take many forms and shapes: e. g., inadequate investigation and preparation of case, including failure to interview witnesses and determination of applicable law; inadvertent and ill-advised settlement and plea of guilty; misunderstanding or breach of bargain with prosecutor; conflict of interest due to representation of co-defendants; incompetent representation at trial, including the failure to anticipate, and handle, evidentiary problems; and failure to pursue a plenary appeal, or one considered frivolous.

"A facile, though only partial, solution would be to appoint only highly conscientious, experienced, trial lawyers from an approved roster, and not from the entire bar membership.

"So far, there has been a general reluctance of courts to find a denial of effective counsel. It is a known fact that most such claims are without merit, and frequently petitioner is merely grasping at legal straws in a bid for freedom. Honoring the claim condemns the defense attorney, and, moreover, in some

---

2. See § 10, Act No. 249, approved June 24, 1943.

instances, would censure the trial judge, and even the prosecutor, for failure to do justice. Upholding such claims would also have the effect of forcing the trial judge to intervene whenever possible error is being committed by defense counsel, and otherwise alter his traditional umpire role in an adversary system. The honoring of such claims would also increase the reluctance of many lawyers to accept court assignments.

"It seems, therefore, that at least the initial burden of proof should be upon the complaining defendant, and such claims will, undoubtedly, receive close scrutiny by the courts."

In Harried v. United States, 128 U.S. App.D.C. 330, 389 F.2d 281, on direct appeal, Burger, J. wrote:

"The burden on the Appellant to establish his claim of ineffective assistance of counsel is heavy. * * *

"In assessing [such] a claim * * * we look to the entire record. * * *"

In United States v. Cariola, 3 Cir., 323 F.2d 180, p. 185, fn. 4, we find this catalog:

(1) Member of bar in good standing;

(2) loyalty to client;

(3) good faith;

(4) service to best of ability; and

(5) character of service comports with justice.

Traynor, C. J., In re Beaty, 64 Cal.2d 760, 51 Cal.Rptr. 521, 414 P.2d 817, gives, "lack of competence, diligence, or knowledge of law" as the critical deficiencies.

We have not considered the impact of niggardly fees for appointed counsel. See Ala. State Bar Foundation Bulletin, Vol. V, No. 2, March 1967; Ervin, Uncompensated Counsel, 49 Am.Bar Assoc. J. 435.

In conclusion, we note that Gore was attended by counsel, a member of the Alabama Bar in good standing, that Gore took the stand in his own behalf (an act which we would consider as prima facie voluntary) and had elicited by his lawyer an account which had it been credited would have led to his acquittal.

It seems to us that Gore lost because of a gap in his credibility. Like the Emperor's invisible clothes, we do not see how the most skillful of tailors could have patched the fabric.

The judgment below is

Affirmed.