505 P.2d 230

**The STATE of Arizona, Appellee,**

v.

**Lee Anthony WADSWORTH, Appellant.**

**No. 2399.**

Supreme Court of Arizona,

In Banc.

Jan. 19, 1973.

Rehearing Denied Feb. 27, 1973.

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phœnix, and Al Vermeire, Law Student, University of Arizona, Tucson, for appellee.

Lewis & Roca by Paul G. Ulrich, David L. Grounds, Richard L. Parrish and William C. Lewis, Jr., Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilty to the crime of furnishing marijuana in violation of § 36-1002.07 A.R.S. with a sentence of not less than five years nor more than five years and one day in the Arizona State Prison.

The defendant raises only one question on appeal which he states in his brief as follows:

"Does the continued classification of marijuana with the 'narcotic drugs' rather than with the 'dangerous drugs' and the attendant draconian penalties for a first conviction for furnishing a small amount of marijuana violate the equal protection clauses of the Arizona and United States Constitutions?"

The facts necessary for a determination of the matter on appeal are as follows. On 16 November 1970, the defendant, in the company of others, including Agent William Greenlee of the Arizona Department of Public Safety, "pulled out a baggie of marijuana, * * * and rolled a cigarette, * * * and passed it around to the people in the room." After the second time the cigarette was passed around, Agent Green-

lee pinched out the fire and placed the butt in his coat pocket.

Thereafter, a conversation ensued between Agent Greenlee and the defendant regarding the possible purchase of a hundred kilograms of marijuana. The defendant provided Agent Greenlee with a second marijuana cigarette before leaving. Upon these facts the defendant was convicted and this appeal followed. Defendant does not deny that he violated the statute in question, § 36–1002.07 A.R.S., but attacks the statute itself.

Arizona has two basic drug statutes. The first, under Title 32, Chapter 18 (Pharmacy), 10 A.R.S., concerns regulation of the so-called "dangerous drugs." Dangerous drugs are defined in § 32–1901, subsec. 9 A.R.S. which lists such compounds as amphetamines, barbiturates, mescaline, and central nervous system depressants and includes the substances commonly called "L.S.D." and "speed." § 32–1992, subsec. A. A.R.S. provides:

"Nothing in this chapter shall be construed to relieve any person from any requirement prescribed by or under authority of law with respect to drugs now included or which may hereafter be included within the classifications of narcotic drugs or marihuana as defined in the applicable federal and state laws relating to narcotic drugs and marihuana."

§ 32–1991 A.R.S. provides that the State Board of Pharmacy, the "division of narcotics enforcement and criminal intelligence within the department of public safety, all officers exercising police powers, and county attorneys shall enforce the provisions of" Chapter 18 concerning dangerous drugs.

Persons convicted of selling or delivering or otherwise disposing of dangerous drugs are to be punished by an imprisonment of one year to life, § 32–1996, subsec. C A.R.S.

The second of the Arizona drug statutes is found in Title 36, Chapter 9 (Regulation of Narcotics, Alkalies, Acids and Poisons), 11 A.R.S. Article 1 is titled "Uniform Narcotic Drug Act" and § 36–1001, subsec. 14 A.R.S. states:

"14. 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone, any other drug of natural or synthetic origin that may be classified as a narcotic by the federal narcotics commissioner, and any substance neither chemically nor physically distinguishable from them."

Cannabis is defined in Section 13 of § 36–1001 A.R.S. as including marijuana.

The furnishing of a narcotic drug is punished under § 36–1002.01 A.R.S. which provides in relevant part:

"A. Except as otherwise provided in this article every person who possesses for sale any narcotic drug other than marijuana shall be punished by imprisonment in the state prison for not less than five years nor more than fifteen years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than five years in prison."

The furnishing of marijuana is punished as follows in § 36–1002.07 A.R.S.:

"A. Every person who transports, imports into this state sells, furnishes, administers or gives away, * * * any marijuana shall be punished by imprisonment in the state prison from five years to life and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than three years."

Our statutes, then, provide that the sale or furnishing of marijuana, though included in the narcotic drugs section, is punished somewhat less severely than the sale of narcotic drugs "other than marijuana", but more severely than the sale or giving away of dangerous drugs including "L.S.D." and "speed."

In evaluating defendant's claim of denial of equal protection in the classification of marijuana with narcotic drugs, we must

look to the United States Supreme Court for guidance. That court has said:

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these:

"1. The equal-protection clause of the 14th Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

"4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911).

And:

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. As statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (citations omitted)" McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

The defendant contends that scientists are now in virtually unanimous agreement that marijuana has fundamentally different effects than heroin, opium, morphine and other so-called "hard drugs," and that in response to this "overwhelming" scientific evidence the continued classification of marijuana with narcotic drugs rather than with dangerous drugs and the resulting severe penalty is a violation of defendant's rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution. The defendant quotes the United States Supreme Court as follows:

" * * * When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. * * * " Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942).

Defendant has filed with this court an extensive if not exhaustive appendix on the subject, containing numerous articles by recognized authorities who discuss the alleged arbitrary classification of marijuana with narcotic rather than with dangerous drugs. These articles in the main are concerned with the characteristics of the various drugs discussed and their effects on the human body and resulting behavior of the user. For the purpose of this opinion, we will admit that dangerous drugs such as "L.S.D." and "speed" are more harmful to the user than marijuana, and that scientifically marijuana may not necessarily be included with the drugs defined in the narcotic drug statute, § 36–1001 A.R.S.

■ This is not, however, persuasive. The fact that a drug in the list of narcotic drugs may be less harmful than those listed in the dangerous drug statute does not make the classification unreasonable.

The classification, we believe, is reasonable and not arbitrary despite the fact that some of the drugs listed could be classified differently. We agree with the dissent of Chief Justice Underwood of the Illinois Supreme Court who said:

> "The majority's lengthy discussion of the characteristics and effects of marijuana as compared to other prohibited drugs clearly illustrates that no two drugs are identical and that marijuana is also quite different from the stimulant or depressant drugs with which defendant seeks to classify it. The fact that a substantial body of scientific and medical opinion now considers marijuana to be more nearly like the drugs included in the Drug Abuse Control Act than those prohibited by the Narcotic Drug Act does not, in my opinion, necessitate the conclusion that there was no rational basis for the classification in question. Medical and scientific opinion is even now by no means unanimous in condemnation of classifications of marijuana with 'hard drugs' and, as the majority notes, 'knowledge in this whole area is not nearly complete.' In the absence of more nearly conclusive evidence that the legislative judgment was devoid of any rational basis, a finding of unconstitutionality is unwarranted, for few rules of law are more soundly bottomed than that which proscribes judicial interference with legislative discretion." People v. McCabe, 49 Ill.2d 338, 352, 353, 275 N.E.2d 407, 414 (1971).

The legislative intent in this State was to proscribe the use of marijuana, not to scientifically categorize it according to its composition and effect, and we believe there was a reasonable basis for the classification of marijuana with the narcotic drugs rather than the dangerous drugs.

We believe there is, however, another reason why the classification and especially the penalties imposed can be sustained. The fact that an objectionable practice is widespread may mandate a stiffer penalty in order to discourage its continued use than a more harmful, less often used practice. We take judicial notice of the fact that marijuana is one of the most widely used drugs among our young. Also, we note that Arizona's geographical proximity to Mexico, a primary source of marijuana, contributes to the magnitude of the problem in this State. These are facts which our State legislature may have considered as justification for retaining marijuana under the Narcotic Drug Act, with its resulting more severe penalties, rather than classifying it with the drugs listed in the Dangerous Drug Act with its lesser penalties.

We have stated:

> "This court is not concerned with the wisdom of the [legislation] nor may we substitute our judgment for that of the legislature in its choice of method of enforcement * * *. Our inquiry is limited to the question of whether the Act contravenes the state and federal constitutions. Wisdom, necessity, propriety or experience of the Act are matters exclusively within the province of the legislature * * *. If the facts underlying the * * * [Act] * * * are fairly debatable as the number of decisions of appellate courts attests, the judgment of the legislature prevails. * * *" Skaggs Drug Center, Inc. v. United States Time Corporation, 101 Ariz. 392, 397, 398, 420 P.2d 177, 182, 183 (1966). Accord, McKinley v. Reilly, 96 Ariz. 176, 393 P.2d 268 (1964), appeal dismissed, 381 U.S. 276, 85 S.Ct. 1457, 14 L.Ed.2d 431 (1965). See also Patsone v. Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914); Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 (1940); McGowan v. Maryland, supra, Commonwealth v. Leis, 355 Mass. 189, 243 N.E.2d 898 (1969); State v. Kantner, Haw., 493 P.2d 306 (1972).

It should be noted that the defendant does not contend that the legislature lacks the power to prohibit the sale, use or possession of marijuana, but questions the legislative classification with the "at-

tendant draconian penalties." Accepting the proposition, as defendant does, that the legislature may, under the police power, prohibit the use of marijuana, it follows that stronger penalties designed to prevent the present widespread use of marijuana are reasonable. We may doubt whether the legislation is wise and does in fact accomplish the ends desired, but we cannot constitutionally question the reasonableness of the legal classification and the resulting penalty.

■ We believe that a comment on the sentence in this case is indicated. The statute (§ 36–1002.07 A.R.S.) provides for a statutory minimum of five years, three years of which must be served before the defendant is eligible for parole. The trial court, therefore, was faced with giving defendant either five years or probation. Because of the defendant's age and because of the amount of marijuana involved in the offense, we searched the record carefully to satisfy ourselves that the sentence did not constitute an abuse of the trial court's discretion. The record indicates that the defendant, after having been arrested on the charge of furnishing marijuana, entered into a plea agreement through his attorney to plead guilty to the crime of "possession" (§ 36–1002.05, subsec. A A.R.S.) which would have allowed the court to sentence him to a year in the County Jail rather than the five year minimum sentence in the Arizona State Prison. After the original charge was withdrawn and the "possession" charge filed, the defendant refused to plead guilty and the "possession" charge was then dropped and the "furnishing" charge refiled. At the time of sentencing, the following transpired:

"THE COURT: Mr. Wadsworth, your attorney has mentioned that you were convicted of furnishing only two marijuana cigarettes, and this is correct; but, there was evidence presented at the time of trial, and there are indications in the Presentence Report, that at the time that this incident took place,

you were attempting to purchase approximately 100 kilos of marijuana. Do you deny that this was the reason for your visit with the narcotics officer and the other people?

"MR. WADSWORTH: No, sir, I don't deny it.

"THE COURT: Approximately 100 kilos of marijuana would weigh approximately 220 pounds, would it not?

"MR. WADSWORTH: I guess so; something like that.

"THE COURT: And I would assume that this wouldn't have been for your own use?

"MR. WADSWORTH: No, it wouldn't have been.

"THE COURT: Did you have any idea as to the penalty for pushing marijuana when you were arrested?

"MR. WADSWORTH: No, sir.

"THE COURT: Weren't you aware from newspaper publicity and other matters that it was a serious felony?

"MR. WADSWORTH: Yes, I knew it was against the law."

And before passing sentence, the court discussed the defendant's past record:

"THE COURT: Mr. Wadsworth, there have been numerous attempts over the past years, in your situation, to turn you into a good citizen to rehabilitate you; and you have been placed on probation. You were confined for some period of time at the Arizona Industrial School. You were sent from the Industrial School to Northern Arizona University, at a time when the Institute for Human Development at the University was accepting people from Fort Grant for rehabilitation purposes; and apparently, you were there and receiving their counseling for about a year.

Subsequent to this, you had the benefit of psychiatric counseling in Phoenix; having seen a doctor there approximately nine times in 1964, fifteen times in 1965, and six times in 1966. In other words, when you first had your

problems with the law, Mr. Wadsworth, you just weren't locked up in a cell. You were given many opportunities which many people do not have."

We find no abuse of the trial court's discretion in imposing the sentence the defendant received in the instant case.

Judgment affirmed.

HAYS, C. J., STRUCKMEYER and HOLOHAN, JJ., and EINO M. JACOBSON, Court of Appeals Judge, concur.

LOCKWOOD, J., did not participate in the determination of this matter.