276 So.2d 592

**Thomas Anderson BOSWELL**

v.

**STATE of Alabama.**

**SC 272.**

Supreme Court of Alabama.

March 29, 1973.

Rehearing Denied May 10, 1973.

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Thomas W. Sorrells, Asst. Atty. Gen., for the State.

FAULKNER, Justice.

Thomas A. Boswell appeals from a judgment of conviction for selling marijuana, in violation of Title 22, § 258(47), Code of Alabama 1940, Recompiled 1958, and sentence of six years in the penitentiary imposed thereon.

The testimony at trial tended to show that Jerry Owensby, an undercover criminal investigator with the U. S. Customs Department, had been working to combat the sale of unlawful drugs in the area of Mobile, Alabama. He testified to having informed the defendant that he wished to buy a pound of marijuana. The defendant, an acquaintance, told Owensby to meet him in twenty minutes. When they met, a conversation ensued:

"Q. What was the essence of that conversation?

"A. The essence of it was that Tommy asked me how much I expected to pay for the pound [of marijuana] and I replied $80.00. He then stated if I would like to buy more than one pound. I stated what would the difference in price be. Tommy then stated that one pound would be $80, five pounds would be $75 per pound, and ten pounds would be $70 per pound.

\* \* \* \* \* \*

"A. I told Tommy that I could purchase three pounds and Tommy stated to me that he would sell it to

me for $75 a pound for a total of $225.00 for the three pounds. Tommy then asked me why was an old man like myself purchasing marijuana. He stated usually when old people buy marijuana, they're trying to put people in jail and I just stated that I had some friends in the northern part of Alabama that wanted some marijuana."

Later, the parties met again in the Flaming Hearth Lounge to consummate the deal:

"Q. When he came into the Flaming Hearth, what did you observe him do?

"A. He entered through the rear door and as he walked by me he elbowed me in the back because I hadn't actually seen him and recognized him. I turned to my left as he walked by and I recognized Tommy and I followed him into the men's room which is located to the south of the front entrance.

"Q. Did you have a conversation with him at that time?

"A. Tommy stated to me that he had already placed the marijuana in the truck and had locked the door. I then gave him the $225.00. He counted it, verified it * * *."

Witness Whatley, hiding in nearby weeds, testified to having observed the defendant placing the marijuana in the back of Owensby's camper.

The defendant himself admitted on the stand to having sold the marijuana to Owensby, but claimed to have turned all of the money over to his supplier, except for $35.00 which he kept as a "commission." Defendant stated in open court:

"I never denied that the transaction was made."

Despite the absence of factual dispute as to the unlawful sale, defendant appealed to the Alabama Court of Criminal Appeals, urging that procedural errors below entitled him to a reversal. On February 28, 1973, the cause was transferred to this court by authority of Title 13, § 111(11a) of our Code.

Appellant's counsel, in his brief, assigns two grounds of error: (1) that the statute defendant was convicted of violating is unconstitutional because it contains more than one subject; and (2) that the statute arbitrarily and unconstitutionally classifies marijuana with "hard" narcotic drugs. Appellant himself, in a 57-page pro se brief, assigns, insofar as we can interpret his turgid and lachrymose prose, at least 21 additional grounds: (3) that he was improperly extradited from Federal prison in Texas to stand trial in Alabama; (4) that he lacked counsel to fight his extradition; (5) that the indictment was vague, and failed to advise him of the nature and cause of the accusation against him; (6) that the indictment was fatally defective in that it lacked the date on which the alleged offense took place; (7) that the indictment was fatally defective in that it omitted the place at which the alleged offense took place; (8) that he never received a copy of the indictment; (9) that he was placed in double jeopardy, because charges at a preliminary hearing were dropped when the judge was advised that the grand jury was indicting defendant for the same offense; (10) that the jury panel composition was improper, lacking young adults; (11) that he was prejudiced by being taken in front of the jury panel handcuffed, chained, barefoot, dirty, unshaven, and disheveled; (12) that the court failed to rule on a motion for his mental examination; (13) that he was given insufficient time to prepare his case; (14) that the performance of his first counsel, Mr. Haas, was so incompetent as to entitle him to reversal; (15) that the performance of his trial counsel, Mr. Alonzo, was so incompetent as to entitle him to reversal; (16) that his appellate counsel, Mr. Barnett, did not communicate with him, and was so incom-

petent as to deny him due process of law and entitle him to a reversal; (17) that his prosecution was due to a vendetta against him by the district attorney; (18) that certain Negro jurors were Black Muslims, and were railroading him to jail just to punish a "blue-eyed devil" in accordance with the tenets of their faith; (19) that reversible error was made to appear in that two jurors slept soundly throughout the trial; (20) that the whole jury was prejudiced against him; (21) that he was entrapped into committing the offense; (22) that he was denied a transcript to prepare an appeal; and (23) that his transfer back into the Federal penetentiary in Texas after his Alabama trial served to void his state sentence as a matter of law.

The pro se brief sums up:

"Appellant has shown the sordid story of this case in grim relief. Luckless Tom Boswell, a country boy, just back from Alaska, set upon and victimized by the lawless criminal strike force prosecution team paid by tax money extorted from Alabama's citizens—from widows and the working man alike!"

■ Appellant's initial argument is that the Alabama Uniform Controlled Substances Act, Title 22, § 258(25) et seq. of our Code, under which he was convicted, is unconstitutional. The Act is divided into five parts: Definitions; Standards and Schedules; Regulation of Manufacture, Distribution and Dispensing of Controlled Substances; Offenses and Penalties; and Enforcement and Administrative Provisions. See "The Uniform Alabama Controlled Substances Act: An Appraisal," 24 Ala.L.Rev. 491 (1972). Appellant contends that covering so many subjects in one statute is violative of the "single subject" clause of our Alabama Constitution, Article 4, § 45:

"* * * Each law shall contain but one subject, which shall be clearly expressed in its title * * *."

He invokes the case of State v. Welkner, 259 La. 815, 253 So.2d 192 (1971), in which the Louisiana Supreme Court quashed a prosecution for possession of pills under a Narcotics Drug Law provision regulating hard drugs and marijuana. In that case the Louisiana Legislature had amended the body of a law without changing the title to reflect the new contents. This precedent is clearly inapplicable to the Alabama law, which regulates "controlled substances," a term broadly inclusive of all drugs listed therein.

■ The purposes of this constitutional provision that every law contain but one subject, clearly expressed in its title, have been much commented upon in our case law. They are generally stated to be notification to the public of the nature of pending legislation, avoidance of fraud on the legislature by inadvertent passage of provisions not related to the title thereof, and prevention of hodgepodge, conglomerate, or "logrolling" legislation. State ex rel. Bozeman v. Hester, 260 Ala. 566, 72 So.2d 61 (1954); State ex rel. Bassett v. Nelson, 210 Ala. 663, 98 So. 715 (1923).

■ Many years ago, in Ballentyne v. Wickersham, 75 Ala. 533 (1883), we stated the test for determining whether a law violates this constitutional provision:

"[T]he title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate to the subject expressed. And when this subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it." 75 Ala. at 536.

Quoting the Kansas Supreme Court with approval, we continued:

"'The "subject" to be contained in a bill under section 16, article 2 of the Constitution, which provides that "no bill

shall contain more than one subject, which shall be clearly expressed in its title," may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and if the title of the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects as one subject, the bill and all parts thereof will be valid.'" Id.

It is clear that the component subjects, marijuana possession, heroin possession, marijuana sale, heroin sale, etc., do combine into the "grand and comprehensive" subject of regulation of controlled substances, and that the title of the Act does include all the component parts.

All the limbs of this tree belong to the tree. No alien branch is hidden in the foliage. We hold that the Alabama Uniform Controlled Substances Act satisfies the constitutional requirement of having a single subject clearly expressed in its title.

█ Appellant next contends that the classification of marijuana with so-called "hard" drugs is unconstitutional. He cites People v. Lorentzen, 387 Mich. 167, 194 N.W.2d 827 (1972), where a 20-year prison term for selling marijuana was held excessive. We are unable to ascertain the relevance of that case to the 6-year sentence imposed here, or in what manner it supports the argument based upon classification of differing drug offenses. Appellant also cites People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407 (1971), where classification of marijuana with hard drugs, rather than with stimulants and depressants, was held unconstitutional. The reasoning of McCabe was rejected in State v. Wadsworth, 109 Ariz. 59, 505 P.2d 230 (1973).

Four principles have been laid down by the United States Supreme Court in Lindsley v. Gas Co., 220 U.S. 61, 78, 31 S.Ct.

337, 340, 55 L.Ed. 369, 377 (1911), to determine whether a statutory classification is proper:

1. The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.

3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

Appellant has fallen far short of carrying the burden of showing that the classifications made by § 258(25) et seq. are invalid. Unlike the statutes in McCabe, supra, and Wadsworth, supra, which involved different scales of penalties, our statute imposes a single range of punishment for selling different controlled substances. (Code, § 258(47)). We hold that the Legislature properly could punish sale of marijuana equally with sale of other controlled substances, and that the Uniform Controlled Substances Act is not subject to attack on the grounds of arbitrary classification.

█ Next, appellant contends that he was denied counsel to fight his extradition from Federal prison in Texas to Mobile, Alabama, and that the extradition itself was unlawful. There is nothing in the

record that would allow us to pass on either of these claims, hence they are not properly presented for review. Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971); Walker v. State, 223 Ala. 294, 135 So. 438 (1931).

■ Appellant argues that the indictment was vague, and was fatally defective in that it omitted the place at which the alleged offense was committed. Unfortunately for this contention, Title 15, § 238 of our Code provides:

"It is not necessary [for an indictment] to allege where the offense was committed * * *."

Appellant further argues that the indictment was fatally defective in failing to give the date of the alleged offense. Our Code, Title 15, § 237, states:

"It is not necessary to state the precise time at which the offense was committed; but it may be alleged * * * generally before the finding of the indictment * * *."

Boswell's indictment stated:

"* * * before the finding of this indictment * * * [Boswell] did unlawfully sell marijuana * * *."

Thus, the statutory requirement was satisfied, and appellant's contention is without merit.

■ Appellant urges that he did not receive a copy of the indictment and thus had no notice of the charges against him, in violation of Article 1, § 6, Alabama Constitution. Again, there is nothing in the record on this question. We do note, however, that he waived the reading of the indictment during his arraignment on September 25, 1972. By pleading not guilty, he waived any argument that he had not been furnished with a copy of the indictment. See Howard v. State, 146 Ala. 149, 41 So. 301 (1906).

■ Appellant contends that he was placed in double jeopardy by the dropping of charges at a preliminary hearing and

subsequent indictment by the grand jury. In this state, jeopardy begins when the jury has been impaneled and sworn, and the indictment read. Scott v. State, 110 Ala. 48, 20 So. 468 (1896). Thus the defendant was not placed in double jeopardy.

Appellant argues that the jury panel composition was improper, because its members were on the whole much older than the average citizen of Mobile County. There is not one word in the record as to this issue; hence we cannot review it. Edwards v. State, supra; Walker v. State, supra.

■ Appellant complains of having been brought to court on one occasion prior to trial handcuffed, chained, barefoot, dirty, unshaven and disheveled. The record is incomplete on this issue; however, we cannot assume other than that was the way the defendant had dressed and groomed himself, and that he was brought to court "as is." No error appears on this point.

Appellant complains that the trial judge failed to rule on a motion that he be given a mental examination. Both the record and appellant's own brief state that the motion was ruled on and denied.

■ Appellant next complains that he was given insufficient time to prepare his case. His second counsel was appointed on September 15. On September 26, this counsel complained to the court that he had been unable to prepare:

"[F]or the entire week in visiting with Mr. Boswell in the Mobile City Jail, I was unable to communicate with him. * * * Maybe you call it lack of cooperation I got from the Defendant, I just call it lack of communication because of his obsession with other points."

The judge then set the trial for the next day, and denied a motion for a longer continuance. The two main grounds for the motion were the unavailability of a witness and a request to examine the alleged con-

traband. The record shows that by the beginning of proceedings next morning the witness was available and the alleged contraband had been examined by a defense expert. We hold that the trial judge's ruling was within the limits of his discretion. Any problems defendant had in preparation were caused by his refusal to cooperate with his counsel.

Appellant contends that each of the three attorneys he had at various stages of the case was so incompetent that his constitutional right to the assistance of counsel was effectively denied.

■■■■ Every litigant is not necessarily entitled to counsel with the skill and silver-tongued eloquence of Daniel Webster, Clarence Darrow, or Rufus Choate. Any attorney who has been admitted to practice in this state is presumed capable of providing effective and successful representation. If, through carelessness or indolence he does not do so, relief is available, but only where his conduct reduces the trial to a farce, sham or mockery of justice. Gore v. State, 45 Ala.App. 146, 227 So.2d 432 (1969), cert. denied 284 Ala. 729, 227 So.2d 435 (1969), cert. denied 397 U.S. 966, 90 S.Ct. 1002, 25 L.Ed.2d 258 (1970).

■■■■ It would be superfluous to review in detail the actions of the three attorneys whose competence is challenged here. Suffice it to say there is no showing whatever that they did not do their jobs well. Every evidence is that their client was a difficult man to deal with, resulting in frequent breakdowns in attorney-client communication. The fact that the client was ultimately convicted is no reflection on their performance. Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965).

Appellant asserts that his prosecution was due to a vendetta against him by the District Attorney. There is nothing in the record regarding this allegation, hence nothing is presented for our review. Edwards v. State, supra; Walker v. State, supra.

Appellant contends that certain Negro jurors were Black Muslims, and were prejudiced against him as a "blue-eyed devil" in accordance with the tenets of their faith. Nothing appears of record to indicate the religious affiliation of the jurors, hence nothing is presented for our review. Edwards v. State, supra; Walker v. State, supra.

Appellant complains of sleeping jurors. There was no objection made to this at the time, if the jurors were in fact sleeping, and the record is silent. Nothing is presented for review on this point. The same is true of the contention that the jurors in general were biased against him.

Appellant complains that he was entrapped into committing the crime.

In Johnson v. State, 36 Ala.App. 634, 636, 61 So.2d 867, 869 (1952), our Court of Appeals stated:

"[E]ntrapment is not available as a defense to a person who has the intent and design to commit a criminal offense and who in fact does commit the essential acts constituting it, merely because an officer of the law, in his effort to secure evidence against such person, affords him an opportunity to commit the criminal act * * *."

■■■■ There is no doubt that the course of conduct leading to the criminal activity began with the request by Owensby, the customs agent, to buy marijuana. The defendant sold the marijuana in response to this request. However, the agent's conduct, merely affording defendant the opportunity to commit a criminal act, falls short of what is necessary to constitute entrapment. Johnson v. State, supra. See also Brewer v. State, 23 Ala.App. 100, 123 So. 86 (1929), in which officers induced defendant to sell them liquor, then prosecuted him for violating prohibition laws. No entrapment was found.

In this case the entrapment issue was submitted to the jury with unusually full

and fair instructions from the trial judge. The jury found no entrapment. We hold they could properly so find.

Appellant complains of failing to receive a transcript to use in preparing his appeal. The problem appears to have arisen between appellant, jailed in Texas, and his counsel in Mobile, Alabama as to who would use the single transcript available. Appellant ultimately did receive the transcript in Texas, and used it to prepare his 57-page pro se brief. No error appears on this point.

■ Finally, appellant contends that his transfer back to Federal custody following his Alabama trial served to void his state sentence as a matter of law. We are unaware of any authority in support of this position.

■ As mandated by Title 15, § 389 of our Code, we have searched the record for possible error. None appearing, the judgment and sentence must be and are affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.

HEFLIN, Chief Justice (concurring):

If "sufficient doubt" of the mental capacity of the defendant to stand trial had been shown then I would have been of the opinion that a hearing should have been held separate from the trial to determine the defendant's mental capacity to stand trial. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. See also my dissenting opinion in Seibold v. State, 287 Ala. 549, 253 So.2d 302.

While the defendant did interpose a plea of not guilty by reason of insanity, he withdrew such plea before it went to the jury. A review of the record in this case indicates that there was not manifested during the trial "sufficient doubt" pertaining to the mental competency of the defendant to stand trial so as to justify a hearing on that issue.

I, therefore, concur in the opinion.