Appeal from denial of writ of error coram nobis.
At the October session of the 1975 Jefferson County Grand Jury, appellant was indicted for the stabbing deaths of two hobos. These two murders allegedly arose out of the same transaction. Appellant was tried separately on the two murder charges. He was represented by the same two attorneys at both trials. Different counsel was appointed to represent appellant in coram nobis proceedings and on this appeal.
On the trial of the first case in April 1976, appellant was convicted of second degree murder. He was sentenced to thirty-five years imprisonment and is presently serving that sentence in the Jefferson County Jail. This court affirmed that conviction on June 28, 1977, without opinion. Lewis v. State, 6 Div. 245. The Supreme Court of Alabama denied certiorari on August 26, 1977, without opinion. Ex parte Lewis, SC 2752.
On the trial of the second case in July 1976, appellant was acquitted.
In December 1977, appellant petitioned the trial court pro se for a new trial by writ of error coram nobis alleging thirty-four grounds. The trial court held a hearing on January 10, 1978, to consider two of those grounds: (1) that appellant's trial counsel erred for failure to subpoena certain witnesses (which ground the court considered in the nature of newly discovered evidence); and (2) ineffective assistance of counsel in violation of appellant's federal sixth amendment rights. The trial court denied appellant's writ, hence, this appeal. *Page 544 
Appellant contends on appeal that if two witnesses who testified at the second trial (wherein appellant was acquitted) had been subpoenaed to testify at the first trial (wherein appellant was convicted), he would not have been convicted in the first instance. Appellant argues that he should be granted a new trial based on that newly discovered evidence, but should this court decide that it is not newly discovered evidence, then trial counsel was incompetent for failure to discover the witnesses.
Testimony at both trials estimated that the murders took place sometime between the evening of July 7, 1975, and the morning of July 8, 1975. The bodies were discovered under the Red Mountain Expressway near the 24th Street viaduct in Birmingham. This is an area near the railroad tracks where hobos and "winos" hang out hoping to obtain part-time work at the nearby warehouses. The warehouse of Standard Distributors (hereinafter, Standard) is located in the vicinity of the alleged murder scene. One or more of the State's witnesses testified at both trials that the appellant and four or five others had worked at Standard unloading pool tables on July 7, 1975, thereby placing appellant near the alleged crime scene on the date of the murders.
The State's evidence on both trials, and inferences therefrom, would indicate that the two hobo victims met the appellant on July 7, 1975, in the vicinity of the Standard warehouse. One of the victims carried a zippered bag. Each was drinking wine and offered a drink to some of the workmen in the vicinity. They then left to purchase more wine and returned shortly. Appellant and a companion, James Jones, had a drink from the fresh bottle, and the victims left. Appellant then indicated to Jones that the victims had money, and he was going to get it. Their bodies were found the next day. A black zippered bag resembling the one carried by one of the victims was found by police in appellant's room. The bag bore the initials "DHK." A zipper tab from the bag bearing the same initials was found at the scene of the crime.
Appellant testified at the coram nobis hearing that he told his attorneys, either before or during the first trial, that there was a witness who could testify in his behalf that he did not work at Standard on July 7, 1975, but in fact worked on July 3, 1975. Appellant could only remember that the witness was called "James" and could not remember his last name. Appellant thought that the witness was employed by Standard and would know on what date the five or six men unloaded the pool tables. Appellant's trial counsel contacted the owner-manager of Standard and was told that no records existed as to the payments made for unloading pool tables on either July 3 or July 7, 1975, because the men were paid from "petty cash." The record is silent as to whether the trial counsel inquired as to the existence of an employee by the name of "James" at Standard.
During the course of the second trial, appellant remembered the name of the witness. The witness was James DeBardeleben, the foreman at Standard. Trial counsel asked for a recess at trial and immediately contacted the owner of Standard. Again trial counsel was told by the owner that no records existed as to date of payment relative to unloading pool tables on either July 3 or July 7, 1975. Trial counsel then contacted James DeBardeleben and Standard's bookkeeper, Mrs. Clara Russell, with positive results. Mrs. Russell and DeBardeleben were then subpoenaed to testify at the second trial. Mrs. Russell testified that records did exist as to the date of payments made to five men unloading pool tables, but that no names were listed. Mrs. Russell testified additionally that only one unidentified man worked on July 7, 1975. Those records were introduced into evidence. Both witnesses testified that the pool tables were unloaded on July 3, 1975.
 I
The requirements necessary to grant a new trial on the claim of newly discovered evidence was stated in Zuck v. State,57 Ala. App. 15, 325 So.2d 531 (1975), cert. denied, 295 Ala. 430,325 So.2d 539 (1976): *Page 545 
 "`. . . "(1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative, or impeaching."'"
The instant issue is whether the fact that appellant worked unloading pool tables on July 3, 1975, instead of July 7, 1975, would so destroy the testimony of State's witnesses that the jury would probably acquit appellant. On coram nobis we are not dealing with mere possibilities. As stated in Zuck, supra, the newly discovered evidence, when taken with the other evidence present, must probably cause the jury to acquit the defendant. "Probability" means a "likelihood," or "having the appearance of truth," or "appearing to be founded in reason, having more evidence for than against." 34 Words and Phrases, 3 "Probability."
A capsule of the other evidence presented at both trials with appropriate differences between the two trials is as follows:
(1) At the first trial the testimony of State's witness Charley Russell concerning whether appellant worked at Standard on July 7, 1975, was not positive and specific. At the second trial, Charley Russell's testimony was positive and specific that five men worked on July 7.
(2) At the second trial, DeBardeleben and Mrs. Russell testified that a large shipment of pool tables were unloaded on July 3 and not July 7. There was no testimony at the first trial on this point.
(3) The testimony at both trials as to the cause of death was that the two victims died of multiple stab wounds.
(4) The testimony of Charley Russell at both trials was that appellant, while working at Standard, demonstrated to co-workers how fast he could draw a knife out of his pocket and flip the blade open.
(5) The testimony of Charley Russell and Detective Gullion at both trials was that appellant was seen drinking wine with the two victims.
(6) The testimony of Rev. Williams in the first trial was that a zippered black bag found in the possession of appellant was like one Rev. Williams had given the victim. His testimony in the second trial was that the zippered black bag was like one he had given to the companion of the victim in this trial.
(7) Appellant's brother testified in the first trial that appellant owned a zippered black bag. Appellant's brother did not testify at the second trial.
(8) Detective Melvin Gullion testified at both trials as to the substance of the testimony of James Jones, Jr., given at preliminary hearing. Jones was allegedly in the company of appellant sometime on the date of the murders, but died before the first case went to trial. Referring to what appellant told Janes concerning the victims, Detective Gullion related the following: ". . . that they had some money and he was going to get it;" "`They got something, and I am going to get it;'" "`You come on and go with me, and I will do it all;'" "`You won't have to do nothing.'"
(9) The testimony of Charley Russell and Detective Gullion at both trials was that appellant was last seen with the victims.
(10) At the first trial, the State's witness, Charley Russell, could not make an in-court identification of appellant. At the second trial, he did make and in-court identification of appellant.
A petitioner in a coram nobis proceeding has the duty to establish his right to relief by "clear, full and satisfactory proof." Vincent v. State, 284 Ala. 242, 224 So.2d 601 (1969). The degree of persuasion — clear, full and satisfactory — entails more than that enunciated in the scintilla rule. "Clear" is highly exacting as to proof of facts and always means more than "reasonably satisfying." Burden v. State,52 Ala. App. 348, 292 So.2d 463 (1974).
Appellant contends that he did not work unloading pool tables on July 7, 1975. He has not contended nor shown that he was not in the company of the victims or the *Page 546 
witnesses on that date. He has made no denial of his guilt and offered absolutely no proof as to his whereabouts when the crime was committed.
Under a long line of cases, failure of the appellant to allege that he was innocent of the crime or that he had a valid defense is fatal to the issuance of a writ of error coram nobis. Mayola v. State, Ala.Cr.App., 344 So.2d 818, cert. denied, Ala., 344 So.2d 822 (1977); Mack v. State, 51 Ala. App. 611, 288 So.2d 150 (1974); Upshaw v. State, 50 Ala. App. 172,277 So.2d 917, cert. denied, 291 Ala. 800, 277 So.2d 919
(1973); Baggett v. State, 47 Ala. App. 299, 253 So.2d 367
(1971).
The fact that appellant could not remember the last name of a potential witness was not the fault of the prosecution nor of appellant's attorney. When appellant did remember the name of witness DeBardeleben, this was not newly discovered evidence, but rather newly disclosed evidence. A petition for writ of error coram nobis is not intended to relieve a party of his own negligence. Thornburg v. State, 42 Ala. App. 70, 152 So.2d 442
(1963).
A writ of error coram nobis is concerned only with errors of fact. Ex parte Powell, 39 Ala. App. 423, 102 So.2d 923 (1958). The error of fact must not be apparent on the record and must have been unknown to the trial court and to the defendant at the time of trial. Ex parte Banks, 42 Ala. App. 669,178 So.2d 98 (1965). The error must be such that, if presented to the trial court, it would have prevented conviction and judgment.Fuller v. State, Ala.Cr.App., 344 So.2d 216 (1977). In effect, it serves as a motion for a new trial on the ground of newly discovered evidence. Tillis v. State, Ala.Cr.App., 349 So.2d 95
(1977), cert. denied, Ala., 349 So.2d 100.
The appellant's newly disclosed evidence would cast serious doubt on that part of the testimony of prosecution witnesses that the appellant was unloading pool tables with them on July 7 when they encountered the two victims. Such evidence is impeaching in nature, not of the entire testimony of the State's witnesses, but only as to part of it. A jury on hearing both versions could determine that the witnesses were mistaken as to whether they and the appellant were working when the victims arrived. The jury could just as logically conclude that the witnesses were not mistaken nor lying about the appellant's threats toward the victim and his following them when they left. Coupled with the recovery of the zippered bag in the appellant's possession, a strong inference of guilt arises which may very well support a conviction. Certainly, the new evidence casts doubt upon the credibility of an important part of the State's evidence, however, a jury is not required to either accept all or reject all of a witness' testimony. They may accept portions and reject other portions. Thus, the new evidence is not such that would prevent conviction.
 II
As for the issue concerning incompetency of counsel, the appellant must show that the representation by counsel was only perfunctory, that the conduct of the attorney reduced the trial to a farce, sham, or mockery of justice, or that the representation shocks the conscience of the court. Hillyer v.State, Ala.Cr.App., 351 So.2d 646, cert. denied, Ala.,351 So.2d 648 (1977); Gore v. State, 45 Ala. App. 146,227 So.2d 432, cert. denied, 284 Ala. 729, 227 So.2d 435 (1969), cert. denied, 397 U.S. 966, 90 S.Ct. 1002, 25 L.Ed.2d 258 (1970);Bell v. Alabama, 367 F.2d 243 (5th Cir. 1966), cert. denied,386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967), appeal after remand, 391 F.2d 286, cert. denied, 393 U.S. 969, 89 S.Ct. 407,21 L.Ed.2d 381 (1968).
As stated in Lee v. State, Ala.Cr.App., 349 So.2d 134 (1977):
 ". . . even though it can be definitely shown that an attorney has made a mistake in the trial of a case that results in a judgment unfavorable to his client, this alone is not sufficient to demonstrate that his client has been deprived of his *Page 547 
constitutional right to adequate and effective representation by counsel . . ."
We cannot determine from the evidence presented at the coram nobis hearing whether defense counsel at the first trial made a diligent search for an employee of Standard named James. The burden is upon the petitioner to show clear and convincing evidence that his legal representation was totally inadequate. He has failed to do so. We find no proof of incompetence on the part of trial counsel.
AFFIRMED.
All the Judges concur.