While I agree with the majority that the writ is due to be denied, I respectfully disagree with the majority's holding that Act No. 590, 1978 Ala. Acts 693, which has been codified as §§ 15-9-80 to -88, Ala. Code 1975, violates § 45, Ala. Const. 1901. In my view, the majority fails to apply the correct standard of review to the question *Page 1270 
regarding the constitutionality of a state statute and fails to follow established law in determining the intent of the legislature in enacting the legislation at issue. Because I believe that Springer has failed to meet his burden of proving that he is entitled to the order of dismissal he seeks by mandamus, I believe that the majority unnecessarily examines the constitutional issue and then decides that issue contrary to the established law of our state.
This Court has stated before that it will not consider the constitutionality of legislation unless a constitutional question is presented and an answer to that question is essential to the disposition of the case. City of Mobile v.Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965). I do not believe that a discussion of the constitutional issue was necessary to the disposition of this case. Assuming, however, that the constitutionality of the legislation is properly reviewable at this time, I nevertheless believe that the majority has failed to apply the proper guidelines for considering the constitutionality of a statute.
Since the earliest days of this State, this Court has followed certain guidelines for reviewing the validity of acts of the legislature. In State ex rel. Meyer v. Greene, 154 Ala. 249,46 So. 268 (1908), those guidelines were set forth as follows:
 "In entering upon a properly invited investigation of the constitutionality of legislative acts, this court has, as it should, borne constantly in mind: First, that the Constitution is a limitation, not a grant, of power; second, that its mandates are the supreme law to the legislative, executive, and judicial departments of this government; third, that the propriety and wisdom of enactments by the lawmakers are questions peculiarly and exclusively within the decisive right of that department, and, if the act under investigation contravenes no provision of the organic law, the judiciary is without rightful power to review the legislative determination of the wisdom and propriety of the action taken; and, fourth, that every enactment is presumptively constitutional and therefore valid, and he who assails it assumes the obligation to demonstrate beyond a reasonable doubt its violation of the fundamental law."
154 Ala. at 254, 46 So. at 270.
The standard of review to be applied when a court considers the constitutionality of a legislative act is as follows:
 " '[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.' "
Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala. 1984) (quoting Alabama State Federation of Labor v. McAdory, 246 Ala. 1,9, 18 So.2d 810, 815 (1944), cert. dismissed, 325 U.S. 450,65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). Therefore, this Court should apply a liberal interpretation in favor of the constitutionality of the legislation challenged as violating the one-subject rule. 1A Norman J. Singer, Sutherland Stat.Const. § 17.01 (4th ed. Supp. 1992) (citing State Board ofInsurance v. National Employee Benefit Administrators, Inc.,786 S.W.2d 106 (Tex.App. 1990)). The majority, however, does not apply a liberal interpretation to the statute and, indeed, it recites no standard under which it has assessed the validity of this legislation.
Second, the majority simply holds the statute unconstitutional because it appears to authorize more than one thing, i.e., inter state detainers (Interstate Agreement on Detainers or "IAD") and intra state detainers (Uniform Mandatory Disposition of Detainers Act or "UMDDA"). However, prior caselaw clearly holds that a statute does not violate the one-subject rule of § 45 as long as the provisions of the legislation are "germane to, cognate with, or complementary to" the same general subject that is the essence of the legislation. Opinion of the Justices, No. 307, 449 So.2d 237,238 (1984). *Page 1271 
 " 'The "subject" to be contained in a bill under section [45] of the Constitution, which provides that "[Each law] shall contain [but] one subject, which shall be clearly expressed in its title," may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and if the title of the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects as one subject, the bill and all parts thereof will be valid.' "
Boswell v. State, 290 Ala. 349, 353-54, 276 So.2d 592, 596
(1973) (quoting Ballentyne v. Wickersham, 75 Ala. 533, 536
(1883)), appeal dismissed, 414 U.S. 1118, 94 S.Ct. 855,38 L.Ed.2d 747 (1974).
The majority states, "It is abundantly clear from § 15-9-88
that the Legislature intended for the Uniform Mandatory Disposition of Detainers Act to pertain solely to the disposition of inter state detainers." I respectfully disagree. The plain, clear, unequivocal language in the preamble to Act No. 590 states the purpose of the Act as follows:
 "To provide that Alabama enter into the Interstate Agreement on Detainers Act, with other member-states, which promotes cooperation between the several states to secure a speedy trial of persons already incarcerated in other jurisdictions by the expeditious and orderly disposition of all detainers based on untried indictments, information or complaints; and to further provide for the uniform mandatory disposition of detainers so as to prescribe the manner and procedures for release of detainers available to incarcerated persons against whom there is pending untried indictments, information or complaints."
The Alabama legislature included specific reference to the UMDDA, which is generally recognized as applying tointra state detainers, and the IAD, which is applicable tointer state detainers. If the legislature had "intended" to enact only one form of detainer relief, i.e., relief as tointer state detainers only, the legislature could have so specified.
A "detainer" is the notification by a prosecutor to the institution where an inmate is currently serving a sentence that the inmate is "wanted to face pending criminal charges." Leslie W. Abramson, Criminal Detainer 94 (1979) (quoting UnitedStates v. Evans, 423 F. Supp. 528, 531 (S.D.N.Y. 1976)). After the inmate is informed of the detainer, he can request the speedy disposition of the pending trial under the provisions of either the IAD, if the charge is pending in a jurisdiction other than the one in which the inmate is incarcerated, or under the provisions of the UMDDA, if the charge is pending in the jurisdiction.
Section 1(a) of the UMDDA states: "Any person who is imprisoned in a penal or correctional institution of this state
may request final disposition of any untried [indictment, information, or complaint] pending against him in this state." Uniform Mandatory Disposition of Detainers Act, § 1(a), 11 U.L.A. 321, 328 (1974). The purpose of the UMDDA has been said to be
 "to carry into effect the constitutional guarantee of a speedy trial and to more precisely define what is meant by a 'speedy trial' . . .; to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges; [and] to provide for the trial of charges against an accused while witnesses are available and their memories fresh."
Abramson, supra, at 116-17 (quoting State v. Wilson, 22 Utah 2d 361,363, 453 P.2d 158, 159 (1969)).
The IAD, on the other hand, "provides the inmate with a method of resolving the charges underlying detainers from another jurisdiction, but also provides prosecutors with a method for securing inmates incarcerated in other jurisdictions for trial before the expiration of their sentences."Id. at 93. The statement of the purpose of the IAD was drafted in response to problems that had been encountered between states with different procedures regarding the return of inmates for trial or for revocation *Page 1272 
of parol proceedings in another state. The IAD is a contract between the joining states concerning the procedures that are to be followed when an inmate serving a sentence in one jurisdiction has an outstanding charge in another jurisdiction.See Interstate Agreement on Detainers, 11 U.L.A. 322-27 (1974).
The legislative intent, as shown by the clear and unequivocal language of the Act, was to legislate a method of dealing with detainers. The fact that the Act and now Chapter 9, Title 15, of the Alabama Code mandate one proceeding when the inmate has a pending charge in a jurisdiction other than the one in which he is currently serving a term of imprisonment, and a different proceeding when the pending charge is in the same jurisdiction, does not violate § 45. The IAD and the UMDDA are definitely "germane to, cognate with, and complementary to" the general subject of detainers. The IAD and UMDDA "embody identical policies and principles". People v. Lewis, 680 P.2d 226, 229 n. 8 (Colo. 1984), overruled on other grounds, People v.Higginbotham, 712 P.2d 993 (Colo. 1986). They "are parallel acts designed to secure a speedy trial to the person incarcerated in a penal institution either in this or another state." Sweat v. Darr, 235 Kan. 570, 574, 684 P.2d 347, 352
(1984). Therefore, I must disagree with the majority because I believe that Act No. 590, codified as § 15-9-80 to -88, Ala. Code 1975, including the IAD and the UMDDA, does not violate § 45, Ala. Const. 1901.
Turning to the merits of the petition for the writ of mandamus, I agree that the writ should be denied. As the majority points out, the petitioner has a heavy burden of proof, because mandamus is a drastic and extraordinary writ that will not be issued unless the petitioner has shown he has a clear and undisputable right to the order sought. See Exparte Martin, 598 So.2d 1381 (Ala. 1992). The material presented to this Court, in my opinion, fails to meet this heavy burden.
Assuming that the UMDDA applies to intrastate prisoners, such as Springer, the trial court, upon granting Springer's motion for speedy trial, was required to bring Springer to trial within 90 days. See § 15-9-84, Ala. Code 1975. Springer alleges that he was not brought to trial within that time, and the material presented to the Court confirms this allegation. However, it appears that during the 90-day period, Springer's trial was scheduled; the trial court, in its response to the petition for writ of mandamus, states that Springer was not tried at that time because of a crowded docket. Indeed, the trial court has submitted the transcript of a proceeding held in open court on the date Springer's case was set for trial, at which time the trial court stated, in the presence of Springer's attorney, that Springer's trial would be continued because of the trial court's crowded docket.
Section 15-9-84 states that a "continuance may be granted on notice to the attorney of record and opportunity for him to be heard." From all that appears to me, I believe that Springer has failed to show that his trial was not properly continued. Therefore, I believe that the writ should be denied.
For the reasons stated above, I am compelled to disagree with the majority's holding that §§ 15-9-80 to -88 violate § 45, Ala. Const. 1901; however, I agree that the writ of mandamus is due to be denied, because I find that Springer has failed to show this Court his entitlement to that remedy.
STEAGALL, J., concurs.