[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1088 
The defendant was indicted and convicted for grand larceny. Sentence was fourteen months' imprisonment which was suspended. The defendant was placed on unsupervised probation.
 I
Initially, it is alleged that the trial judge committed reversible error in refusing to allow defense counsel to cross examine prosecution witness Jud Colley about a civil action he had instituted against the defendant.
The grand larceny charged in the indictment involved a theft of a waste oil processor, alleged to be "the personal property of Mary Chevrolet Company, Inc." Colley was the president of Mary Chevrolet and had filed a civil action for damages against the defendant based on the defendant's taking of the waste oil processor.
Defense counsel sought to prove that Mary Chevrolet did not own the waste oil processor by attempting to cross examine Colley about the civil action. At trial defense counsel did not contend that he was attempting to show bias by the disclosure of the civil action. To show bias, testimony concerning the civil suit would have been admissible. Brooks v. State,393 So.2d 486 (1980); Green v. State, 258 Ala. 471, 64 So.2d 84
(1953).
However, the fact that a civil suit was pending against the defendant was irrelevant and without probative value to prove who owned the waste oil processor. The general rule is:
 "It is not, however, permissible to introduce in evidence civil judgments or decrees rendered against the defendant, even though they involve the same matters on the trial of a criminal prosecution, for the obvious reason that the judgment or decree in the civil action may have been rendered on a state of facts totally irrelevant in the criminal case, and on a different rate of the measure of proof. It is quite probable, also, that the defendant might be civilly, but not criminally, liable, nor is there a mutuality of parties. The proceedings are totally different, and such judgments and decrees are not admissible as a general proposition. Britton v. State, 77 Ala. 202. "
Wall v. State, 2 Ala. App. 157, 169, 56 So. 57 (1911).
In Hill v. State, 366 So.2d 296, 314 (Ala.Cr.App. 1978), affirmed, 366 So.2d 318 (Ala. 1979), this Court held that in a prosecution in which the defendant was convicted of first degree manslaughter of a person fatally injured in an automobile accident, the restriction of the defendant's cross examination so as to exclude evidence of a pending wrongful death action, which was brought against the defendant and which arose from the same facts as the criminal case, was not error.
Here the trial judge refused to allow defense counsel to go into the matter of any civil action against the defendant unless the relevancy of that case could be established. At trial defense counsel's sole contention for the relevancy of the civil suit was to "show who actually owned this piece of machinery." The trial judge did not limit defense counsel from showing ownership in any other manner:
 "THE COURT: Let me see if I can't clarify it. If you want to get into the ownership and possession of this thing, I think you can ask him a — questions relevant or relating to the contract if you want to, but as far as any pending suits, I don't think you can ask that."
We find no error in the action of the trial judge. The pending civil suit against the defendant simply had no probative value to the issues involved in this criminal action although both civil and criminal actions arose out of the same facts. *Page 1089 
As stated, nowhere in the record does defense counsel contend that he was trying to show the bias of the witness by showing that he had filed a civil action for damages against the defendant. This contention is made for the first time on appeal. A defendant is bound by the objection which he asserted at trial. Franklin v. State, 357 So.2d 364 (Ala.Cr.App.), cert. denied, Ex parte Franklin, 357 So.2d 368 (Ala. 1978). Only those grounds of objection presented to the trial court can serve as a basis for a reversal of its action. Harris v. State,57 Ala. App. 558, 329 So.2d 618 (1976).
 II
The defendant also contends that the trial court erred in permitting the State to cross examine the defendant, over objection, on the amount of money the defendant had raised through a corporation (Oil Salvage Manufacturing, Inc.) from the sale of "exclusive territories." The capital necessary to fund the construction of the waste oil processing machines was to be acquired from the sale of exclusive territories for the marketing of the machine.
 "Q. How much money (was received from the sale of exclusive territories)?
 "MR. STOKES (Defense Counsel): This has nothing to do with this, Judge.
 "THE COURT: Overruled. I think we have opened it all up.
"MR. STOKES: All right, sir."
Defense counsel's cross examination of State's witness Jud Colley revealed that the corporation the defendant had set up to sell franchises for the machine had generated one hundred thousand dollars. The State, on redirect examination, questioned Colley on whether the defendant had received any of this money.
Initially, it appears that defense counsel waived any objection he might have had by agreeing to the Judge's ruling. However, even if the adverse ruling was not concurred in by defense counsel, we find no error in the action of the trial judge.
The defendant claimed rightful ownership of the waste oil processor through his interest in Oil Salvage Manufacturing, Inc. (OSMI) and Oil Savings, Inc. (OSI). This was the foundation for his entire defense. The fact that the defendant actually removed the waste oil processor from the premises of Mary Chevrolet has never been disputed.
The defendant was the president of OSMI since its inception. The purpose of OSMI was to raise the capital necessary to fund the development of the waste oil processor. This was to be accomplished through the sale of exclusive territories to the marketing rights to the machine. The defendant himself testified, "I was the one that raised the money and I was the one that had the most to gain and the most to lose, so I wasn't going to stand by and see the project go down the drain." Colley testified that C F Oil was to receive approximately $300,000.00 to set up a factory and manufacture the machines. This money was to come from OSMI through OSI. It can readily be seen that the internal structure and operation of OSMI, OSI, and C F Oil were interwoven and connected. Consequently, it was essential, under his defense, that the defendant be allowed to show what interest he had, if any, in these companies and that the State be permitted to cross examine him on this issue.
The question objected to sought evidence relevant to the issues in this case.
 "Any testimony tending reasonably to establish the probability or improbability of a fact in controversy is admissible. Holland v. State, 25 Ala. App. 147, 142 So. 112 (1932). The test of probative value or relevancy of a fact is whether it has any tendency to throw light upon the matter in issue even though such light may be weak and fall short of its intended demonstration. McCain v. State, 46 Ala. App. 627, 247 So.2d 383 (1971)."
Tate v. State, 346 So.2d 515, 520 (Ala.Cr.App. 1977).
Consequently, we find no error in the action of the trial court. *Page 1090 
 III
The indictment charged the larceny of one waste oil processor, "the personal property of Mary Chevrolet Company, Inc." The State's evidence proved that the machine was owned by C F Oil Co. and that Mary Chevrolet had rightful possession of the processor at the time it was stolen. This constituted no variance between the indictment and the evidence. In Hubbard v.State, 374 So.2d 427 (Ala.Cr.App. 1979), this Court held that there was no variance between an indictment which alleged that the property stolen was the property of a representative of the corporation during the time the property was stolen and proof that the corporation was the owner of the property. An allegation in an indictment for grand larceny is not defective because the stolen property was alleged to be owned by a warehouse which was in fact the bailee. Davenport v. State,53 Ala. App. 326, 299 So.2d 767, cert. denied, 293 Ala. 751,299 So.2d 771 (1974). "The allegation of ownership of property in the name of a bailee or trustee does not affect the sufficiency or validity of the indictment." Davenport, 53 Ala. App. at 329,299 So.2d 767.
In connection with this issue, the defendant also contends that the State never proved that Mary Chevrolet was in lawful possession of the waste oil processor. However, Jud Colley testified that C F Oil owned the machine by virtue of its oral contract with OSI; that C F Oil hired Mary Chevrolet to develop the machine; and that Mary Chevrolet "owned the machine by virtue of possession by virtue of the bills owed on the machine." The fact that the defendant testified that OSI owned the machine and that he as president and former director of OSI had a legal right to possession and control of the machine created a question of fact for the jury.
 IV
As his final ground for reversing his conviction, the defendant attacks the competence of his retained trial counsel alleging that that competence was so lacking as to deny him his constitutional right to effective assistance of counsel. This issue was initially raised by the defendant at his sentencing hearing. In his motion for new trial, the defendant alleges that he was "not adequately, capably, and efficiently" represented by counsel and lists five reasons:
 "(a) That the Defendant had absolutely no knowledge and was not advised by his Counsel that his trial was to be held on February 27, 1980, and only learned of it when the Jury was being struck.
 "(b) That the Defendant was advised by his Counsel that the Court proceeding to be held on February 27, 1980, was a Preliminary Hearing, and the Defendant therefore thought it was a discovery proceeding in which no adjudication of guilt would be made.
 "(c) That the Defendant contacted his Counsel on the evening of February 26, 1980, upon arriving in Troy, Alabama, for the purpose of discussing the hearing the next day and was advised by his Counsel that there was no need to meet and review Defendant's evidence until 9:00 A.M. on February 27, 1980.
 "(d) That Defendant had material witnesses willing to testify in his behalf at trial who were not present and whose testimony was crucial to the Defendant's defense. Said witnesses would be present to testify on behalf of the Defendant should this Honorable Court grant a new trial.
 "(e) That Counsel for Defendant failed to discuss the elements of the offense with which Defendant was charged in his closing argument to the Jury."
In brief on appeal, the defendant states, "The crux of Richard Bridges' contention that his legal representation was inadequate is that he was never advised that the jury trial of his case was to be held on February 27, 1980. At the hearing on the motion for new trial, the defendant testified that he appeared at trial under the impression that it was to be a preliminary hearing; only immediately before the jury selection had actually begun did he learn that he was in fact on trial for the merits of the indictment. *Page 1091 
The allegations by the defendant against his trial counsel are practically unrefuted in the record. The State admitted it had no knowledge of this issue and did not attempt to dispute any allegation or contention made by the defendant in this regard.
The only response from trial counsel, whose competence the defendant attacks, came at the sentencing hearing when the issue was first raised.
 "Judge, let me say this. I corresponded with Dick's (the defendant's) attorney in Georgia, Mr. Vellanas, and advised him as to the trial and had a couple of conversations with him on the telephone about it. I subpoenaed two witnesses for Dick, neither of which was available. One of them had called me and told me that he couldn't be here on that day, why, I don't know. I discussed it with Dick on the day of the trial that Mr. Warren called and said that he could not be available and the other witness, of course, we knew that subpoena power couldn't reach either witness, but — I had been assured that they would be available as a witness from the other individuals."
Despite defendant's allegations, the record shows that defense counsel was very active in his representation of the defendant. He introduced a number of exhibits, including a stock certificate, a contract, checks, letters, and signature cards, which, by their presentation, tend to refute the allegation that defense counsel was not prepared.
The allegations against trial counsel are very serious yet the record does not show that the defendant's trial was reduced to a "farce, sham or mockery of justice." Despite criticism, the rule in this State is that, in order to have a conviction reversed because of incompetent counsel, a defendant must show that the representation by counsel was only perfunctory, that the conduct of the attorney reduced the trial to a farce, sham, or mockery of justice, or that the representation shocks the conscience of the court. Boswell v. State, 290 Ala. 349,276 So.2d 592 (1973); Lewis v. State, 367 So.2d 542, 546
(Ala.Cr.App. 1978), cert. denied, 367 So.2d 547 (Ala. 1979), and cases cited.
 "(E)ven though it can be definitely shown that an attorney has made a mistake in the trial of a case that results in a judgment unfavorable to his client, this alone is not sufficient to demonstrate that his client has been deprived of this constitutional right to adequate and effective representation by counsel. . . ."
Lee v. State, 349 So.2d 134, 136 (Ala.Cr.App. 1977).
An adequate defense in the context of the constitutional right to counsel does not mean that counsel will not commit what may later prove to be tactical errors, and matters of trial strategy, in the absence of a clear showing of improper or inadequate representation, will be left to the judgment of trial counsel. Tillis v. State, 292 Ala. 521, 296 So.2d 892
(1974); Taylor v. State, 291 Ala. 756, 287 So.2d 901 (1973). The conviction of a client does not prove lack of either zeal or skill on the part of defense counsel. Mills v. State,275 Ala. 217, 153 So.2d 650 (1963).
The burden of sustaining a charge of inadequate representation rests on the defendant. Here the defendant did not show that the testimony of the two "material witnesses" who did not testify would not be cumulative of the evidence already in the record. The implication in the record is that the testimony of both witnesses would tend to establish the defendant's ownership of and relationship to the stolen property. There is no showing that their testimony on these issues would add any significant facts other than those supplied by the defendant's own testimony. "No ineffective representation results where trial counsel fails to call witnesses whose testimony would only be cumulative to evidence already in the record." Robinson v. State, 361 So.2d 1172, 1175
(Ala.Cr.App. 1978).
Considering the entire record before us, it is clear that the trial was not reduced to a farce or mockery of justice. The mere fact that the defendant, by hindsight, thinks that he could have received better representation at trial does not mean that trial counsel was inadequate or incompetent. *Page 1092 
We have searched the record for error prejudicial to the defendant. Finding none, we affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.