[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 597 
Arthur D. Mallory was charged and convicted of robbery in the first degree in the Circuit Court of Montgomery County and was sentenced as a habitual offender to life without parole. This appeal follows.
In early August of 1981, appellant approached one Ray Stanford, the assistant manager of a Montgomery jewelry store, and proposed buying some jewelry from him "under the counter without a written receipt." About two weeks later, appellant returned to the jewelry store accompanied by Willie James DeBruce, both of whom attempted to persuade Stanford "to meet them later on." DeBruce exhibited "three to four thousand dollars" in hundred dollar bills to Stanford. Appellant and DeBruce looked at the most expensive diamonds, inquiring of Stanford the quantity of such diamonds on hand and the closing hours of the store. The two left the store after Stanford "would not sell illegal, steal any of it," and they told Stanford they would contact him later.
Due to the actions and demeanor of appellant and DeBruce while they were in the store, Stanford became suspicious that they "might want to rob the place." After his manager arrived at the store, Stanford informed the manager of the incident and of his suspicions. They then called the Montgomery Police Department and relayed the information to them.
Later that day, either appellant or DeBruce called Stanford, setting up a meeting with Stanford at 7 p.m. at the parking lot of a Montgomery motel. According to Stanford, "they sounded very forceful."
After coordinating the scheduled meeting with the Montgomery Police Department, Stanford met appellant and DeBruce. They invited Stanford to their motel room and offered him "a large amount of drugs." Stanford refused in both instances and, instead, invited DeBruce, who was standing with appellant, to join him in Stanford's car, parked near the swimming pool. Appellant remained outside of the car, DeBruce got in on the passenger side, and Stanford entered on the driver's side. Appellant then walked over to the corner of the motel building, about thirty or forty feet from the car, "acting as a lookout." Just as Stanford closed the car door, DeBruce requested to see "the merchandise." As Stanford reached into his pocket for the *Page 598 
bag containing the jewelry, he looked up and saw DeBruce pointing a pistol at him. DeBruce also demanded, and received, two diamond rings which Stanford was wearing.
Stanford then engaged the car's starter with the car in gear; as the car lunged forward, Stanford was able to open the door and make his exit. As he ran, he yelled "[h]e's got a gun." As DeBruce (who had the jewelry) got about twenty feet away from the car, he was stopped and arrested by Officer Strope of the Montgomery Police Department who, by prearrangement, was on a stakeout at the motel's swimming pool.
The value of the store's jewelry was estimated at "more than ten thousand dollars," and the value of Stanford's personal rings was estimated to be three thousand dollars.
 I
Appellant questions the sufficiency of the evidence for a conviction of robbery in the first degree, urging that the trial court erred in the denial of his motion to exclude the State's evidence and his motion for a new trial. We disagree.
The requisite elements of the charged offense are adequately demonstrated by the evidence; therefore, the only question presented on the motion to exclude is whether there was sufficient evidence at the conclusion of the State's case in chief for the jury to reasonably conclude that appellant was an accomplice and knew that DeBruce had a gun. The fact that appellant himself was unarmed is not fatal.
Section 13A-2-23, Code of Alabama 1975, provides: "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense: . . . (2) He aids or abets such other person in committing the offense; . . . ."
Appellant had made the initial contact with Stanford at the jewelry store, and it was he who brought DeBruce to the store to meet Stanford.
Witness Stanford testified, without objection, that based from the actions and demeanor of appellant and DeBruce while they were in the jewelry store earlier that day, he feared they "might want to rob the place." Both Officers Burks and Strope of the Montgomery Police Department, without objection, characterized the action of the appellant during the time of the robbery as that of a lookout. Also, at the time Officer Strope stopped and arrested DeBruce, appellant immediately ran.
When this evidence is considered in the light most favorable to the State, as we are required to do in considering the motion to exclude, there is sufficient basis for the jury to reasonably conclude that appellant did aid and abet DeBruce in the robbery and that appellant knew that DeBruce had a gun. The motion to exclude the State's evidence was, therefore, properly denied.
The only evidence offered by appellant was the testimony of DeBruce, who testified that he and appellant came to Montgomery from Birmingham to buy some jewelry, and that he did not indicate to appellant that he had a gun. However, on cross examination, when the State was attempting to impeach DeBruce's testimony, he testified that he had previously pleaded guilty to the robbery charge in this case, and that at the time of entering his guilty plea, he had told the trial judge accepting the plea that appellant knew about the gun.
The question of whether the State met its burden of proving the necessary elements of appellant's complicity, including his prior knowledge of the gun, and his intent to promote or assist in the commission of the offense, was fairly put to, and resolved by, the jury. We find no error in the trial court's denial of appellant's motion for a new trial.
 II
Appellant urges that the trial court erred to reversal in its failure to grant a mistrial on the basis of a question to one of the State's witnesses by the prosecutor.
The State asked Officer Burks if he knew whether the Pinto (which appellant was driving at the scene when the robbery *Page 599 
occurred) was a stolen car. Appellant interposed an objection, which was sustained by the trial court. Appellant also moved for a mistrial on the basis that the question was prejudicial in nature and for a jury instruction that the question be disregarded. The mistrial motion was denied, and the jury instruction motion was granted. The trial court instructed the jury to "totally disregard" the question in that it was "totally improper and doesn't have anything to do with this case."
A motion for a mistrial should not be granted when the prejudicial qualities of a comment can be eradicated by action of the trial court. Further, there is a prima facie presumption against error where the trial judge immediately charges the jury to disregard the remark. See Nix v. State, 370 So.2d 1115
(Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979).
The prosecutor's question was not of such magnitude as to be ineradicable, and the trial court immediately charged the jury to disregard the question. We find no error in the trial court's denial of appellant's motion for a mistrial.
 III
Appellant contends that some of the State's questions to DeBruce on cross examination were prejudicial to the extent of being an impermissible denial of his Sixth Amendment right to confront and cross examine his accusers. He further contends a denial of due process under the Fourteenth Amendment on the basis that the State withheld from him the statements DeBruce made at the guilty plea hearing. We find that these contentions are without merit.
DeBruce testified on direct examination that appellant was not aware of the gun. The questions by the State were for the purpose of rebutting and impeaching this testimony.
The pertinent portion of the testimony was:
 "Q. And when you pled guilty you told the Court, with myself present and your attorney, Mr. Law, who is seated over there, who was also present, that Arthur did know about this gun and that y'all went out there to get these jewels from this man; didn't you?
 "A. Yes, sir, but I ain't said Mr. Malloy [sic] knew nothing about the gun.
"Q. But you said that at the plea; didn't you?
"Mr. Hartley: We object, Your Honor.
"The Court: Overruled.
 "Q. Didn't you say that at the plea? When you pled guilty and told the court all the truth, that's what you told Judge Thomas — all I want to do, Judge, is tell you the truth — didn't you tell the Judge that he knew about that pistol? This pistol right here that's sitting up on this table?
"The Court: Answer the question.
"A. I could have said that, Judge.
". . . .
 "Q. And that's the day you told the Judge that y'all had talked about all this and that the Defendant, Arthur Malloy or Arthur Mallory, saw that gun and knew you were going up there with that gun. Now you said that, didn't you?
"A. I said it."
It is apparently the appellant's position that the form of these questions served to give the jury the impression that the trial judge and the prosecutor were confirming the accuracy of the information being elicited by the questions. We disagree and hold that such questions are clearly permissible on cross examination for impeachment purposes in that the information sought constitutes self-contradiction in the form of prior inconsistent statements. See C. Gamble, McElroy's AlabamaEvidence § 155.02 (1) (3d ed. 1977).
The prior inconsistent statements of DeBruce used by the State to impeach his credibility are not within the scope ofBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963), as appellant contends. The distinguishing features are that (1) the prior inconsistent statements of DeBruce were made in open court, rather than *Page 600 
being statements accessible only to the prosecution and undiscoverable by the appellant prior to their surprise use at trial, and (2) the prior inconsistent statements were used to impeach appellant's witness, not the appellant. We find that the facts in the case before us do not fall within the intent and reach of Brady v. Maryland, supra, and that failure of the prosecution to furnish appellant with DeBruce's prior inconsistent statements does not violate appellant's due process rights.
 IV
Appellant contends that he was denied a fundamentally fair trial in that (1) the trial court erroneously failed to charge the jury as to the use of impeachment evidence, and (2) that DeBruce's admission of his guilty plea to the robbery charge prejudiced the jury against the defendant.
Our review of the entire proceedings leads to the inescapable conclusion that appellant was, in fact, afforded a fundamentally fair trial. Additionally, neither of the matters cited by appellant was brought to the attention of the trial court and, therefore, they are not preserved for appellate review. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981).
 V
Appellant's appointed counsel filed a motion for a new trial on a timely basis. Also, appellant filed, pro se, a motion for a new trial, together with an amendment to the motion. The trial court denied the motions, and appellant then filed, pro se, a request for an evidentiary hearing on the motion for a new trial, which request was denied by the trial court. Appellant complains that the trial court erred in denying his request.
Appellant's request for an evidentiary hearing was filed after the trial court had ruled on his motions for a new trial. Consequently, appellant's contentions are lacking in merit. Additionally, a trial court's decision on a motion for a new trial rests largely within the sound discretion of the trial court and, in an appellate review of such decisions, this court will indulge every presumption in favor of the correctness thereof. Ala.Dig.Crim.Law, § 911.
We find no error in the trial court's denial of appellant's request for an evidentiary hearing.
 VI
Appellant argues that he was unconstitutionally denied effective assistance of counsel for the reasons that (1) a written jury instruction should have been requested to the effect that DeBruce's prior self-contradictory statement is proper to be considered only for impeachment and not as evidence of the truth of the matter, and (2) objections should have been interposed to certain of the State's questions to the police officers and to DeBruce. We find that these cited reasons do not rise to the level of an inadequate defense in the context of a constitutional right to counsel.
The trial tactics and strategy employed by a defense counsel during the course of a criminal trial are easily quarter-backed when viewed after the fact and in a deliberate manner. This hindsight always tests a perfect 20/20. However, complete absence of error on the part of a defense counsel is neither required nor anticipated by the Sixth Amendment.
Effective assistance of counsel does not mean that counsel must be free of error. Graham v. State, 403 So.2d 275
(Ala.Cr.App.), writ quashed, Ex parte Graham, 403 So.2d 286
(Ala. 1980); Bridges v. State, 391 So.2d 1086 (Ala.Cr.App. 1980). A defense counsel's mistake in a trial, which results in an unfavorable judgment to the accused, is not alone sufficient to demonstrate ineffective assistance of counsel. Lewis v.State, 367 So.2d 542 (Ala.Cr.App. 1978), writ denied, Ex parteLewis, 367 So.2d 547 (Ala. 1979).
The standard of determining the issue of ineffective assistance of counsel is that either (1) the counsel was only perfunctory, or (2) his conduct reduced the trial to a farce, sham or mockery of justice, or *Page 601 
(3) the representation was such as would shock the conscience of the court. Bridges, supra; Summers v. State, 366 So.2d 336
(Ala.Cr.App.), cert. denied, 366 So.2d 346 (Ala. 1978). Clearly, the conduct of which appellant complains falls far short of the mark. Neither are we persuaded that the "reasonably effective assistance" standard has been violated in this case. See Harris v. Oliver, 645 F.2d 327 (5th Cir. 1981).
 VII
Appellant's arguments that his sentence of life without parole was improper lacks merit.
The issue of the validity of the Habitual Felony Offender Act and its application to offenses committed prior to its enactment were answered to the appellant's detriment in Jamesv. State, 405 So.2d 71 (Ala.Cr.App. 1981).
The prior offenses on which the court relied in invoking the Habitual Felony Offender Statute occurred in Jefferson County. By virtue of a local act applicable to Jefferson County (Act No. 1037, Acts of Ala. 1971, p. 1847, approved September 7, 1971), certified copies of trial docket sheets have the same force and effect as minutes of the courts. Thomas v. State,395 So.2d 1105 (Ala.Cr.App. 1981). The certified copies of the docket sheets, i.e., the minutes of the trial courts, used to prove the prior convictions affirmatively show that appellant was represented by counsel on all of the prior convictions which were used to enhance appellant's punishment under the Habitual Felony Offender Act. Although two of the docket sheets show that counsel was appointed to represent the appellant (in cases No. 13854 and 14127), the docket sheets do not specifically recite that the appellant was attended by counsel (or had waived counsel) when he withdrew his not guilty pleas and entered guilty pleas. The showing on the docket sheet that appellant was represented by appointed counsel is sufficient to satisfy the requirement that prior convictions can be used to enhance punishment only where it has first been affirmatively established that the accused was represented by counsel or waived counsel at the time of the prior convictions. SeeDouglas v. State, 406 So.2d 1051 (Ala.Cr.App.), cert. denied,406 So.2d 1053 (Ala. 1981).[1]
The requirements of Burgett v. Texas, 389 U.S. 109,88 S.Ct. 258, 19 L.Ed.2d 319 (1967), having been met, we find no error in appellant's sentence.
 VIII
The issues of the trial court's failure to charge on complicity and the refusal to give appellant's written charge No. 2 were not preserved for appellate review. Allen v. State, supra.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The reader's attention is called to the inadvertent omission of the word "not" between the words "does" and "specifically" on the 12th line of Issue I at page 1052 of the reported opinion.