ON RETURN TO ORDER OF REMANDMENT AND ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
The trial court is to be commended for its extraordinarily prompt “RETURN TO THE ORDER OF REMANDMENT,” which was *1010 filed on July 27, 1983, eight days from the date of the order of this Court remanding the case with directions. Appellee’s application for rehearing was filed on August 2, 1983, well within the time required therefor.
In appellee’s brief in support of its application for rehearing, it sets forth a motion pursuant to Rule 39(k) of the Alabama Rules of Appellate Procedure, in which it “respectfully moves this Court to adopt the following facts and statements as a part of its opinion on rehearing” in this cause:
“The Appellant at the time of his original pleas of guilt (8) was fully advised of his Constitutional rights to a trial by jury, attorney, cross-examination, service of process, etc., which are necessary in order to receive a Constitutionally valid guilty plea. Also the Appellant made his plea voluntarily and of his own free will, and without any allegation of threat or coercion. Also, the Appellant entered the pleas because he was in fact guilty of these offenses.”
In our opinion, the statement indented and quoted above does not constitute an “additional or corrected statement of facts,” and for that reason is not within the coverage of Rule 39(k). However, we are in entire agreement with the conclusions set forth in each of the three sentences of said indented and quoted statement. We should have made it clear to all concerned, although the writer evidently did not do so, that of the only two issues presented by appellant, the second issue, the one claiming ineffective assistance of counsel, was the only issue upon which a disturbance of the judgment of the trial court would be justified.
We had some hope, faint though it may have been, that a return to our order remanding the case with directions, would show with reasonable certainty whether appellant’s failure to obtain probation was the result of his attorneys’ not bringing to his attention the fact that a fifteen-year sentence would disqualify him for probation.
In the well prepared “RETURN TO THE ORDER OF REMANDMENT” is the following:
“The Appellant takes the position that he did not know that his fifteen (15) year sentence rendered him ineligible for probation. However, even if the Appellant’s sentence had been for ten (10) years or less, since he failed to request probation prior to the commencement of the execution of the sentence, he would thereby be ineligible for probation. This Court therefore determines that the Appellant’s subsequent request for probation ‘would be a futile gesture’ for that reason.”
The statement to the effect that a failure to request probation prior to the commencement of the execution of a sentence bars probation is correct, as was held in Dailey v. State, Ala.Cr.App. 402 So.2d 1117, 1118 (1981), which is cited and relied upon in the return to the order of remandment. Nevertheless, we are not absolutely certain that the principle is applicable here as to the question of the timeliness of the application or request for probation. Dailey v. State, was expressly predicated upon Ex parte Smith, 252 Ala. 415,41 So.2d 570 (1949), and Ex parte Robinson, 44 Ala.App. 469, 213 So.2d 409 (1968). In Ex parte Robinson, at 213 So.2d 409, 410, we find:
“In Ex parte Smith, 252 Ala. 415, 41 So.2d 570, it was brought out that this power to suspend sentence is a continuing one until the execution of the sentence actually begins, i.e., up to the very moment of delivery of a convict by the sheriff to the penitentiary agent.”
Whether the defendant in the instant case had actually commenced service of the sentence remains somewhat vague, except for the positive declaration of the trial court. Of course, if the execution of the sentence had commenced before the request for probation was made, the trial court’s statement is correct that it “... therefore determines that the Appellant’s subsequent request for probation ‘would be a futile gesture’ for that reason.” Even so, there is the possibility that the failure of his counsel to initiate a timely request for probation would suggest an additional basis for coram nobis relief on the ground that appellant had not received effective assistance of his counsel. *1011 Such a suggestion, however, is not to be found in the petition for writ of error cor-am nobis, or in the transcript of the proceedings as to the judgments of conviction and sentence; it is to be found in the transcript of the coram nobis hearing and in the briefs of parties in this Court. We find, therefore, that we should not conclude that appellant’s contention as to ineffective representation by counsel does not encompass a claim to the effect that defendant’s failure to obtain probation was a result of defendant’s counsel’s failure to file within the time legally required a request or petition for probation.
In the “RETURN TO THE ORDER OF REMANDMENT," it is stated that “To make a current determination of whether Appellant should be granted probation, this Court [the trial court] would need to consider those fáctors which were not presented at the hearing on January 28, 1982.” According to the return, one such factor is “that the Appellant entered a guilty plea on February 14, 1983, in the Circuit Court of Dekalb County, Alabama, to the charge of escape in the second degree and was sentenced to fifteen (15) years in the State penitentiary to run concurrently with the sentence imposed here on appeal.” We have no further information as to when that crime occurred or as to the circumstances thereof.
We now acknowledge that the return to the order of remandment demonstrates that our effort to resolve by such remandment the question whether appellant has been injured by the failure of his counsel to know and advise him that he would not be eligible for probation if he received a sentence of more than ten years has been a “futile gesture” on the part of the writer. We now turn to the question whether their failure to so advise him constitutes a violation of his Constitutional right to effective representation of counsel.
We are informed by the record proper or the transcript of the proceedings that one attorney represented defendant in four of the cases and another attorney represented him in the other four. During the testimony on the coram nobis hearing of one of the attorneys appointed by the court to represent the defendant in four of the cases, he testified:
“... The way I remember that came about, we [he and the defendant’s attorney in the other four cases] weren’t sure exactly how to break it up and we talked with Mr. Igou [District Attorney] to see what would be most beneficial to Mr. Blevins as far as getting out. And at that point in time I don’t even think I was even considering probation mainly primarily due to the fact that there were eight felony cases. I didn’t think there was a chance for it. That’s my memory, but as a practical matter we called the probation officer and asked his suggestion on it and it was his suggestion that if you give him the one fifteen-year sentence and run the rest concurrent with it, that he’d be eligible for parole sooner, and, frankly, I didn’t know if that was true or not, but I’d be always had . ..
“Q. One aspect of probation is the split sentence. Split sentence is also possible where probation is possible.
“A. That’s correct.
“Q. Was it your and Mrs. Bush’s [the other attorney] opinion that with a fifteen-year sentence he might have been entitled to probation at that time?
“A. No, it was our opinion that based on what the probation officer had told us that he would be eligible for parole sooner if he had a fifteen-year sentence.
“Q. I believe you testified you don’t have any independent recollection yourself of any discussion with Shane Blevins about probation?
“A. No.
“Q. But I believe you said you suspected there was some discussion because you always have that discussion in plea bargaining situations with your client?
“A. That’s true.
“Q. If Mr. Blevins said that he did have discussions with you and Mrs. Bush at the time — do you recall a discussion you had with Shane Blevins when the District Attorney had proposed seventeen years?
*1012 “A. No. There again, I’m not saying it didn’t happen. I just don’t recall it.
“Q. If Mr. Blevins said that he did ask about probation and he was told by you or Mrs. Bush or both of you that he could apply for probation, would that have been consistent, possible at that time?
“A. It’s possible. If I had said it, it was poor judgment on my part because, you know, if you have more than a ten-year sentence you aren’t eligible for probation.
“Q. Okay.
“A. I think what you are basically asking me is did I know at the time that he couldn’t apply for probation if he got more than ten years, and to answer that honestly, I’m not sure. The only thing I’m sure about on probation, and I’m not sure if I communicated this to him or not, but in my own mind I was satisfied that eight felony convictions, I felt like he had very little chance of probation.”
Mrs. Terry Bush, defendant’s other appointed attorney at the time of the entry of the judgments of conviction and sentence, also testified on the hearing of the coram nobis petition. On cross-examination by the appointed attorney for the petitioner (now the appellant), she said:
“Q. Mrs. Bush, did you, however, tell him that he had the right to file an application for probation?
“A. I think at one point we talked about that he could apply for probation, but he generally wanted to know what his chances were and I told him, frankly, they were not very good with the number of cases he had and that he didn’t have any employment, and we were not having a whole lot of luck getting any help out of any of his family members at that time.
“Q. I believe from your testimony at the previous — at the probation — hearing you testified, as I understand, and I believe at that time that you did not learn until some timé after that, though, that he would be barred from probation by ten years or more?
“A. That’s correct.
“Q. And he was not informed that a ten-year sentence would bar him from being qualified for probation?
“A. I didn’t. I don’t know what Gillis
“Q. Now, is it not common and doesn’t it, in fact, happen many times that on application for probation that the Judge grants sometimes a split sentencing?
“A. I explained to him that the Judge would have the right to do whatever and that I would not speak for the Judge but that, frankly, there would not be that much of a chance of probation and he never indicated to me that he wanted to ' apply for probation.”
The return to the order of remandment contains the following statement by the trial judge:
“This Court’s Order of January 27, 1982, expressed a favorable impression of the rehabilitative potential in the home of the Appellant’s uncle.”
The testimony of appellant’s uncle was given on January 15, 1982, a few days more than three months from the date of the judgments of conviction and sentence. The testimony of appellant’s uncle manifested an extraordinarily kind and loving sympathy for appellant and a willingness on the part of the uncle to do all that he could in an effort to justify probation, notwithstanding the undisputed evidence otherwise, particularly as to repetitive crimes by him, to the effect that he would not be granted probation. There is no indication that defendant or either of his attorneys had been informed prior to the judgments of conviction and sentence of the attitude of defendant’s uncle that furnished the only consideration of a request for probation. This strengthens the conclusions we reach as hereinafter stated.
The failure of defendant’s attorneys to know that defendant would have been precluded from favorable action on a petition or request for probation by reason of a sentence to imprisonment for more than ten years is not to the credit of experienced attorneys handling criminal cases. However, it is to the credit of defendant’s attor *1013 neys that under the undisputed facts they manifested extraordinary ability and painstaking effort and loyal devotion to their client’s cause and achieved for him the result for which they can be proud and he should be everlastingly grateful. We are persuaded that they should not be unduly blamed and that he should -not be unjustly rewarded for their failure to check as to the ineligibility of defendant for probation in the event of a sentence to imprisonment for more than ten years, a matter which to them at the time was apparently of little, if any, importance. In addition, it is to be noted that the advantage defendant received as to future parole by reason of the sentence of fifteen years in one of the cases and that all concerned, including defendant, were conscious of that advantage emphasizes the fact that the thoughts of defendant and his attorneys chiefly centered, in the best interest of the defendant, upon a sentence that was not to be suspended in part or in full by probation.
In our opinion, the failure of defendant’s attorneys to advise him prior to the judgments of conviction and sentence that he would be ineligible for probation if he received a sentence of more than ten years did not constitute a violation of his Constitutional right to effective representation by counsel. The judgments of conviction and sentence, the thorough and painstaking consideration of the belated effort to obtain probation, and the judgment denying coram nobis petition were all by the same judge. This gave such judge an extraordinarily good opportunity to arrive at a correct judgment as to the petition for writ of error coram nobis. Whether such judgment was correct is the pivotal question for us to decide. In our opinion, it was correct.
Although the coram nobis petition was a pro se petition and is to some extent unintelligible, as noted in the first paragraph of our opinion on original submission, this does not prevent us from our giving thorough consideration to the issue presented by the petition and by appellant’s able counsel on this appeal. Even so, regardless of what appellant may now think, he failed on the hearing of the coram nobis proceeding to meet the burden that was upon him to show by clear and convincing evidence that he did not receive effective representation of counsel in the cases in which he was convicted and sentenced, which burden has been expressly recognized in a number of cases, including Woodard v. State, Ala.Cr.App. 433 So.2d 1198, 1201 (1983), Lewis v. State, Ala.Cr.App., 367 So.2d 542, writ denied, 367 So.2d 547, and Robinson v. State, Ala.Cr.App., 361 So.2d 1172.
The judgment of the trial court should be affirmed. Such.action would render moot appellee’s application for a rehearing.
The foregoing opinion, as well as the opinion on original submission, was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in the result only.