In 1977, Charles and Geraldine Steen, man and wife, were convicted at separate trials of securities fraud. Since that time, they have been involved in a lengthy attempt to have a court reporter prepare transcripts of their trials to enable them to have a review of the trial proceedings leading to their convictions.
We granted the writ of certiorari in this case to review the decision of the Court of Criminal Appeals, pursuant to ARAP 2, to dismiss the Steens' appeals for failure to file a transcript in a timely manner. Before addressing the issues, we look to the underlying facts and progression of this case.
The facts are not in dispute. Mrs. Davis was the court reporter who recorded the proceedings at both of the Steens' trials. *Page 1387 
She died before beginning to prepare their transcripts. Mrs. Davis had received payment in advance from Geraldine Steen. Charles Steen had been adjudged indigent by the trial court; payment for his transcript was expected to come from the State.
The Court of Criminal Appeals allowed the Steen appeals to remain on the docket until that court made satisfactory arrangements with court reporter Spinks, in order that he transcribe Mrs. Davis's notes. On 14 October 1979, Mr. Spinks wrote to Circuit Judge Clatus Junkin regarding the feasibility of preparing a transcript:
 ". . . I have spent quite some time going through the notes of the Charles Steen trial and listening to the tape recordings made at the time of trial. Having done so, it is my belief that I can provide a reasonably accurate transcript of the proceedings from the obtainable notes and tapes, despite the poor quality of the recordings. The shorthand outlines look neat and clear just to glance at them, but in reality the reporter dropped much material, actually wrote the incorrect outlines for some words, and shaped many of the outlines in a distorted fashion, out of true proportion, which makes reading the notes a slow, tedious task. If the back-up tape cassettes were of good quality they would be of much more help than they actually will be. Much of what was recorded is undecipherable. . . ." (Emphasis added.)
In early January of 1980, the trial court made arrangements with Spinks to undertake the transcriptions.
In early February of 1980, Spinks wrote an Assistant Attorney General, John Gibbs, that he, Spinks, "no longer felt he could take out the time to attempt to do this work, that the work will be of a tedious and unpleasant nature. . . ." Neither the Steens nor their attorney were informed of this. However, a few days later, Gibbs filed a motion to dismiss the Steens' appeals then pending with the appeals court. On 11 February 1980, that court issued an order dismissing the appeals.
The Steens' subsequent attempts to have this order vacated resulted in the following order by the Court of Criminal Appeals:
 "It appearing to the Court of Criminal Appeals that obtaining transcripts of the trials in the above-styled causes is impossible, it is hereby ordered that the motion to set aside dismissals and reinstate appeals be and the same is hereby denied."
We granted the Steens' petition for writ of certiorari. On 26 September 1980, we remanded to the Court of Criminal Appeals with directions to set aside the convictions and remand to the trial court for new trials. The rationale employed by this court in its determination that the orders of dismissal were improper, was stated as follows:
 "Because of the finding by the Court of Criminal Appeals that obtaining these transcripts is impossible, and because this impossibility was neither induced nor contributed to in any degree by Petitioners, the orders of dismissal are reversed and these causes are remanded to the Court of Criminal Appeals with directions to set aside the convictions and remand these causes to the trial court for new trials. Our holding is mandated by the minimum requirements of due process of law. See Pope v. State, 345 So.2d 1388 (Ala.Cr.App. 1976); and ARAP 2."
On rehearing, we modified that opinion by ordering a remand to the trial court for a hearing on the possibility and feasibility of obtaining a transcript of the evidence.
On 25 June 1981, the trial court (Mayhall, special judge) held a hearing in accordance with the above matter. The District Attorney stated that he had contacted the Alabama Court Reporters Association for names of persons with the skills necessary for transcribing the Steens' records. He was provided only with Ms. Laird's name and the name of one other court reporter. Upon finding that the other court reporter had retired, he contacted court reporter Laird and requested that she review the record and testify at the hearing as to the possibility and feasibility of transcribing Ms. Davis's notes. *Page 1388 
At the hearing Laird testified that a random examination of the tapes and court reporter's notes of the Steens' trials convinced her that an accurate transcript could be prepared. As to the process she would have to go through in order to get an accurate record, she said:
 "Well, you have to rough it out with her notes and her tapes because there are things you can't understand in either one at times. . . ." (Emphasis added.)
Laird further testified that it would take close to a year to prepare the record. She refused to estimate as to how much she would charge, except that she would have to charge according to the amount of time spent rather than the number of pages.
On the same date as the hearing the trial court entered an order finding that a transcript was both possible and feasible and ordered that it be prepared by Laird. The Steens attempted to appeal this order but on 6 August 1981, their notices of appeal were stricken on the ground that the trial court's order was not appealable.
On 24 August 1981, Laird wrote a Mr. Royals, counsel for the Steens, that she was now in a position to begin transcribing the trial proceedings and requested a check for the sum of $7,500 as partial payment as a condition of her beginning to do so. Royals contacted the trial court by letter which read:
 "We received a letter from Mrs. Laird asking for partial payment of $7500.00 to get her started with the transcription of the above mentioned Court Reporter's notes. You may remember at the hearing the Court reporter could not give us any price at all. I believe since we have received the enclosed letter the entire matter has been put in a different light.
 "In view of this new development I wondered what your thoughts would be on a new hearing to determine if the transcript can be prepared in a reasonably feasible manner. At this point I do not believe it is feasible since the Steens have no way to raise this amount of money.
 "We attempted to appeal your Order to the Criminal Court of Appeals but they decided it was not an appealable matter. We are really in a bad fix. We need to try to find a remedy somewhere." (Emphasis added.)
When Royals received no response from the trial court regarding his letter, he contacted the District Attorney involved in the case who agreed to have a hearing set on the matter. The Steens then filed petitions for clarification of their status as indigents and for reconsideration by the trial court of its decision that the preparation of the transcripts was possible and feasible.
Meanwhile, in order to prevent their appeal from being dismissed for failure to file a transcript, the Steens had attempted to file for an extension of time with the criminal appeals court. They were informed by letter dated 15 September 1981 by that court that it could grant extensions of time only
on motion of the court reporter. Ms. Laird filed the request and was granted one extension. However, when the deadline for filing arrived again, she refused to request any further extensions without payment.
With the case in this posture, on 24 November 1981, because of the Steens' failure to timely file transcripts, the criminal appeals court dismissed their appeals pursuant to ARAP 2. Ala.Cr.App., 416 So.2d 1119.
On 6 January 1982, the Steens filed a motion to reinstate the appeals and for further relief. That motion was denied on 8 January 1982. On 22 January 1982, they filed their petition for rehearing. It was denied on 25 January 1982. In both instances, no opinion accompanied the orders.
We granted the present petition of the Steens for the writ of certiorari to determine whether their appeals should be reinstated.
The dispositive issue now presented is whether the appeals court failed to follow its prior decisions and decisions of this court regarding dismissal.
Customarily, where a transcript has not been timely filed in the appellate court, it remands the case to the trial court to *Page 1389 
determine whether the appellant was at fault in failing to file. The trial court, if it determines that the appellant was without fault, then directs the preparation of the transcript or a succinct statement of evidence in lieu of a transcript. If preparation is not feasible, the trial court is then required to grant a new trial. See Pope v. State, 345 So.2d 1388
(Ala.Cr.App. 1976); Swanson v. State, 346 So.2d 1164
(Ala.Cr.App. 1976); Smith v. State, 346 So.2d 464 (Ala. 1976), on remand, 346 So.2d 465 (Ala.Cr.App. 1976); Baldwin v. State,342 So.2d 939 (Ala.Cr.App. 1976).
That procedure was not followed in these cases. The Steens' appeals were dismissed in a perfunctory manner. Due regard for the fundamental rights of a defendant requires that the appellate court not apply penalties for noncompliance with the rules in an arbitrary fashion.
Because the decision of the appellate court to dismiss the Steens' appeals without a remand for determination of fault is in conflict with prior decisions of this court and the courts of appeals, it was erroneous and is due to be reversed.
The trial court is the proper forum for a determination of fault for failure to file and for a determination of whether it is possible and feasible for a transcript to be prepared. Popev. State, 345 So.2d 1388, 1390 (Ala.Cr.App. 1976). In this case, because of the undue and unusual nature of the delay caused the Steens regarding their attempts to perfect meaningful appeals and because we have the necessary facts before us, we will make the required determinations.
It is the duty of counsel for appellants to see that records pertaining to appeals are timely filed. Orum v. State, 286 Ala. 679, 245 So.2d 831 (1971); Seals v. State, 282 Ala. 586,213 So.2d 645 (1968). The State has contended that the Steens are guilty of dereliction of their duty to timely file transcripts with the appellate court, citing three specific omissions as grounds for its argument.
First, the State argues that the Steens should have produced a court reporter of their own at the 25 June 1981 hearing. The record from the hearing on remand does not support this argument. When the trial court asked whether Royals, the attorney for the Steens, wanted to have another court reporter look at the records to give an opinion about the ability to transcribe them, the District Attorney informed the trial court he had received Ms. Laird's name from the President of the Alabama Court Reporter's Association after asking for a list of court reporters capable of preparing a transcript from Ms. Davis's notes. He said the names of only two court reporters were on the list submitted to him, one of whom had retired. He further stated he didn't think it would be fruitful for Royals to try to find someone else. Because the State apparently produced at the hearing the only court reporter in Alabama capable of transcribing the Steens' records, the State's contention that the Steens should have brought their own reporter is untenable.
Second, the State contends the Steens had an opportunity at the hearing after remand to establish their indigency so that they would not be liable to pay for the transcripts. In light of the fact that Charles Steen had proceeded throughout trial and appeal in an indigent status and Geraldine Steen requested that such status be granted her because of the large amount of money Laird had demanded as partial payment for the transcripts, the Steens would have been exceptionally intuitive to have considered it necessary to establish their indigency at the hearing ordered for the determination of whether it was possible to obtain transcripts.
Third and last, the State argues the Steens should have filed a request with the criminal appeals court for an extension of time for the filing of transcripts. However, when attempting to file their first request for an extension, the Steens found the court would not accept such a request, except from the court reporter responsible for the preparation of the transcript. As Laird is *Page 1390 
the only court reporter in Alabama qualified to prepare the transcripts and she refused to file for an extension without prior partial payment of the sum of $7,500, the Steens were not in error for failing to request an extension of time for filing from the appellate court.
The records reflect that the Steens have diligently pursued their appeals and were not at fault for not filing transcripts of their trial proceedings in a timely manner. In fact, they have shown particular diligence in the face of the difficulties encountered in attempting to perfect their appeals.
The State has proposed a remedy in the event this court should determine the Steens' appeals were erroneously dismissed. It has requested that the cases be remanded to the trial court for a hearing to determine whether the Steens are now indigent. The State asks this court, on remand, to direct that if the Steens are determined to be indigents, they be allowed to appeal after transcripts are procured and paid for by the State as provided for in § 12-22-190 et seq., Code 1975. It also requests direction that if the Steens are not determined to be indigents, then their appeals stand dismissed, or, alternatively they be allowed sixty days within which to procure a court reporter to transcribe the proceedings. We have grave reservations about the appropriateness of such a course of action, given the past difficulties in obtaining transcripts and the length of time that has transpired during which the Steens attempted to perfect appeals with transcripts fairly reflecting the proceedings that occurred during the trials which resulted in their convictions.
Nowhere in that which is before us is there anything to suggest with reasonable assurance of success that court reporter Laird would be willing to transcribe the Steens' trial proceedings at the reduced rate to which she would be entitled were the Steens declared indigents. In fact, every indication is that she would not.
What are the Steens to do if Laird is now unwilling to undertake preparation of the transcripts? From all indications, the transcribing of the proceedings will be an arduous task and it appears Laird is the only court reporter in the state capable to do the work involved with any degree of accuracy.
Laird testified it would take approximately one year for the preparation of both transcripts. If, after the transcripts are submitted to the trial court, there be objections regarding accuracy, then the court must allow appellants time to prepare a succinct statement of the evidence, pursuant to Rule 10 (d) and (e), ARAP. See International Brotherhood of Teamsters,Chauffeurs, Warehousemen and Helpers of America v. Hatas,287 Ala. 344, 252 So.2d 7 (1971). Because their attempts to have review of their trial proceedings began in 1977, time is a vital element gravely affecting the Steens' right to a remedynow.
Should we remand, according to the State's request, for a hearing regarding indigency, the Steens would undoubtedly find themselves postured precisely as before the last dismissal of their appeals because of the inability to obtain transcripts. Both court reporters, who have reviewed the notes and tapes, from which the transcripts of necessity must be prepared, have found omissions and unintelligible portions in both making it virtually impossible under existing circumstances, including extended consumption of time and great expense, to have prepared any reasonably accurate transcripts of the proceedings leading to their convictions in 1977.
Another alternative we must consider is the feasibility of preparing a Rule 10 (d) and (e), ARAP, succinct statement in lieu of the transcripts. Five years have elapsed since the Steens' trials. Their allegations and contentions regarding prejudicial and reversible error that occurred during the trials involve almost every portion of the testimony and voir dire examination of the juries prior to their selection, making it necessary to establish the entire transcript from memory. Under these circumstances, we do not consider that preparation of succinct statements in lieu of transcripts would afford the Steens a viable remedy on appeal. *Page 1391 
Therefore, unquestionably, the more pragmatic, least expensive, and more speedy relief we can afford the Steens under these most unusual circumstances is new trials. A decision of the Fifth Circuit, Ferguson v. Thomas,430 F.2d 852, 856 (5th Cir. 1970), aptly exemplifies this:
 ". . . [T]he standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved."
We conclude that we are required to reverse the orders of dismissal of the Court of Criminal Appeals and remand these cases to that court with directions that it set aside the convictions and remand the cases to the trial court for new trials.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.