552 So.2d 857 (1987)
Johnny HARRIS
v.
STATE.
1 Div. 695.
Court of Criminal Appeals of Alabama.
January 27, 1987.
Rehearing Denied February 24, 1987.
Certiorari Denied May 29, 1987.
On Return to Remand December 8, 1987.
Rehearing Denied January 26, 1988.
Death Sentence Vacated and Reduced to Life Sentence June 16, 1989.
*858 Robert D. Segall of Copeland, Franco, Screws & Gill, Montgomery, and Ruth A. Bourquin and Gary S. Guzy of Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for appellant.
Charles A. Graddick, Atty. Gen., and William D. Little, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-763.
BOWEN, Presiding Judge.
This matter comes before this Court on a "motion for remedy for unavailability of transcripts," under Rule 10, Alabama Rules of Appellate Procedure, filed by Johnny Harris pursuant to Rule 27, A.R. A.P. We remand this cause to the trial court for further proceedings.

I
In 1975, Harris, who was serving life sentences for rape and four robberies, was convicted for the murder of a prison guard during a 1974 riot at Atmore Prison. Death was the mandatory punishment. Title 14, § 319, Alabama Code 1940. That conviction was affirmed on appeal, Harris v. State, 352 So.2d 460 (Ala.Cr.App.1976), affirmed, Ex parte Harris, 352 So.2d 479 (Ala.1977), but set aside in June of 1981 when the trial court granted Harris' petition for writ of error coram nobis and ordered a new trial on the ground that Harris had been denied constitutional due process in that the State had failed to disclose evidence impeaching one of its principal witnesses at Harris' trial and because exculpatory defense witness Jessie Jett was unavailable at the time of Harris' trial.
*859 Harris was retried and reconvicted in July of 1983 on the original indictment. In October of 1983, after a hearing on a motion for new trial, the trial court ordered the transcription of the trial proceedings. The trial transcript was completed and filed with the circuit court in April of 1984.
In June of 1984, Harris, represented by new counsel, requested, and the trial court ordered that the record on appeal be supplemented with the transcripts of the pretrial proceedings. Those proceedings consist of: hearings in (1) February (12th and 26th) of 1982, (2) October of 1982, and (3) January of 1983; (4) the arraignment and hearing of June 20, 1983; and (5) the evidentiary hearing in June of 1978 conducted in connection with the coram nobis petition and concerning the composition of the grand jury which indicted Harris in 1975. In ordering that the record on appeal be supplemented with these five proceedings, the trial court specifically stated the coram nobis hearing in June of 1978 had been "incorporated into the record for the instant appeal and formed the basis for this Court's denial of Mr. Harris' repeated motions to quash the indictment and this Court's October 24, 1983, ruling on the Opinion and Judgment of the Court on motion for judgment of acquittal and/or motion for new trial." In that same order, the trial court noted "that the State of Alabama has no opposition to the granting of said motions of defendant-appellant Johnny Harris and consents to the granting of the same."
In July of 1985, transcripts of the proceedings we have labeled above as (2) and (3) were filed with the circuit court. Subsequently, it was discovered that the court reporter's notes for proceedings numbered (1), (4), and (5) could not be located.
In June of 1986, Harris, through counsel, filed, pursuant to Rule 10, A.R.A.P., a motion for a new trial or, in the alternative, a motion for acceptance of substitutes for unavailable transcripts. Counsel submitted affidavits as substitutes for the missing portions of the record and argued that any remedy for the unavailability of the transcripts other than quashing the indictment would be inadequate, in part because of the search the record rule and plain error doctrine standards of appellate review in death cases.
On the 12th of August of 1986, a hearing was held on this motion. The trial court denied Harris' requests for a new trial or to quash the indictment. The trial court accepted the affidavits of Harris' former counsel (William Allison and Donald Bolton, Jr.) as substitutes for the missing records of hearings (1) and (4). The Attorney General objected to accepting the affidavit of another former attorney for Harris, W. Clinton Brown, Jr., as a substitute for the missing record of hearing (5) on the grand jury issue. The Attorney General objected to Brown's affidavit as "merely an incomplete, hearsay recollection of the testimony of other witnesses" and because it was not a "complete recitation of the facts." The trial court refused to accept Brown's affidavit. The effect of his ruling leaves Harris without any relief from the fact that he has no record or alternative evidence of the coram nobis proceedings described as number (5).
On November 7, 1986, Harris filed a "motion for remedy for unavailability of transcripts" before this Court. The Attorney General filed his response on December 12, 1986. Harris replied on December 17, 1986. The Attorney General filed a second response on December 23, 1986. In their pleadings before this Court, both Harris and the Attorney General have filed affidavits which were not presented to the trial court.

II
Because Harris was convicted and sentenced to death, he had a right to appeal and the review of his conviction and sentence was "automatic." Evans v. Britton, 472 F.Supp. 707 (S.D.Ala.1979), reversed on other grounds, 628 F.2d 400 (5th Cir.1980), rehearing denied, 639 F.2d 221 (5th Cir. 1981), reversed, Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), cert. denied, Evans v. Alabama, 462 U.S. 1110, 103 S.Ct. 2461, 77 L.Ed.2d 1339 (1983); Alabama Code 1975, § 12-22-150. *860 "In death cases this court has a standard of review stricter than that for other criminal convictions." Cox v. State, 50 Ala.App. 339, 340, 279 So.2d 143 (1973); Echols v. State, 47 Ala.App. 23, 26, 249 So.2d 639 (1971); Gore v. State, 45 Ala.App. 146, 148, 227 So.2d 432, cert. denied, 284 Ala. 729, 227 So.2d 435 (1969), cert. denied, Gore v. Alabama, 397 U.S. 966, 90 S.Ct. 1002, 25 L.Ed.2d 258 (1970). Our review in death cases is governed by the plain error doctrine which imposes on this Court "the duty to examine the entire record to determine whether any error exists prejudicial to the defendant." Watters v. State, 369 So.2d 1272, 1273 (Ala.1979), overruled on other grounds, Beck v. State, 396 So.2d 645 (Ala.1980); Alabama Code 1975, § 12-22-241; A.R.A.P., Rule 45A. Furthermore, in this particular case, it must be noted that "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review." Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986). A conviction does not "cure the taint attributable to a charging body selected on the basis of race." Hillery, 474 U.S. at 264, 106 S.Ct. at 624. Once it is determined that there was discrimination in the selection of a grand jury, it is "mandatory" and "imperative" that the indictment be quashed and any conviction reversed. Id. Furthermore, racial discrimination in the selection of jurors is not a novel allegation. Compare Preston v. Mandeville, 479 F.2d 127 (5th Cir.1973).
Because Harris has a right to appeal and because he is indigent, the State must afford a "`record of sufficient completeness' to permit proper consideration of [his] claims." Draper v. Washington, 372 U.S. 487, 499, 83 S.Ct. 774, 781, 9 L.Ed.2d 899, cert. denied, 374 U.S. 850, 83 S.Ct. 1914, 10 L.Ed.2d 1070, cert. denied, 374 U.S. 852, 83 S.Ct. 1919, 10 L.Ed.2d 1073 (1963). However, "[i]t is well established that the lack of a verbatim transcript is not a constitutional defect when a suitable alternative is provided." Harris v. Estelle, 583 F.2d 775, 777 (5th Cir.1978), citing among other cases Mayer v. City of Chicago, 404 U.S. 189, 194, 92 S.Ct. 410, 414-415, 30 L.Ed.2d 372 (1971). "Alternative methods of reporting trial proceedings are appropriate particularly where state appellate rules provide a procedure for reconstruction of the trial record, and indigents and nonindigents are treated the same." Harris, 583 F.2d at 777.
It is undisputed that the trial court relied on the evidence and proceedings in the coram nobis hearing in denying certain motions at Harris' second trial, and, further, that the trial court ordered those proceedings included in the record on appeal without objection or protest from the Attorney General. It is also undisputed that the court reporter's notes of the coram nobis proceedings have either been lost or destroyed. Although the Attorney General argues before this Court that Harris did not make a timely request for a transcription of the coram nobis proceedings, an alternative argument has not been advanced that Harris is not entitled to a record of the coram nobis proceedings even if his request for transcription was timely. From the arguments presented to this Court, it appears undisputed that Harris is entitled to some reasonable and sufficient alternative to a transcript of the evidence and proceedings of the 1978 coram nobis hearing, providing he was not at fault in requesting a transcription of those proceedings. Ex parte Steen, 431 So.2d 1385 (Ala. 1983); Pope v. State, 345 So.2d 1385 (Ala.), on remand, 345 So.2d 1388 (Ala.Cr.App. 1976), cert. dismissed, 345 So.2d 1390 (Ala. 1977).
The issue of whether Harris made a timely request for a transcription of the coram nobis hearing has not been fully litigated in the trial court. Even Harris recognizes that his request for a transcription of the 1978 coram nobis proceedings was only made "[a]s early as February 12, 1982." See Harris' "Reply to the State's Response to Defendant's Motion for Remedy for Unavailability of Transcripts," p. 3 (filed in the Alabama Court of Criminal Appeals on December 17, 1986).
This issue of the timeliness of the request for the transcription is best resolved in the trial court. The same supernumerary *861 circuit court judge has presided over all the proceedings in this case from Harris' first trial in 1976 until the present. During this time, both Harris and the State have been represented by different attorneys. It appears that the judge and Harris himself are the only participants who have been continually and consistently involved in the criminal prosecution and conviction of Harris for his alleged actions in the Atmore Prison riot of 1974. Moreover, if the trial court determines that Harris made a timely request for a transcript, it will be in the best position to re-create that record. "Disputes about the content of the record are best resolved by the trial court, before the judge who heard the evidence and is likely to recall what was said and done. Appellate courts are at a disadvantage in confronting claims of incorrect trial records because they have little or no basis upon which to determine what happened below." Vaughn v. Britton, 740 F.2d 833, 836 (11th Cir.1984), cert. denied, 469 U.S. 1163, 105 S.Ct. 920, 83 L.Ed.2d 932 (1985); Perkins v. Perkins, 465 So.2d 414, 415 (Ala.Civ.App. 1984).
If the trial court finds that Harris was not at fault in requesting a record of the coram nobis proceedings, it must then either provide Harris with a sufficient alternative to a transcript, grant him a new trial, Steen, supra, or quash the indictment. Sutton v. Lash, 576 F.2d 738, 745 (7th Cir.1978); Pate v. Holman, 341 F.2d 764, 777 (5th Cir.), opinion modified, 343 F.2d 546 (5th Cir.1965). If the trial court endeavors to provide Harris with a record, the burden will be on the State to provide an "effective alternative." "[W]here the grounds of appeal, ... make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an `alternative' will suffice for an effective appeal on those grounds." Mayer, 404 U.S. at 195, 92 S.Ct. at 415. "A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." Britt v. North Carolina, 404 U.S. 226, 230, 92 S.Ct. 431, 435, 30 L.Ed.2d 400 (1971). The State's burden in this case will be substantial because of the stricter standard of review in death cases and because Harris is represented by new appellate counsel who did not participate in the prior proceedings. United States v. Upshaw, 448 F.2d 1218, 1223 (5th Cir.1971), cert. denied, Upshaw v. United States, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972).
Here, Harris has exercised his duty to either submit a correct record on appeal or call the court's attention to any omission or error in the trial record. Vaughn, 740 F.2d at 836; Welch v. State, 455 So.2d 299 (Ala. Cr.App.1984). If the Attorney General objects to Harris' "statement of the evidence or proceedings from the best available means, including his recollection," pursuant to A.R.A.P., Rule 10(d), and does not "propose amendments thereto" but merely objects so that the trial court is unable to "settle" anything and reconstruct the record, Harris must be afforded a new trial or the indictment must be quashed. Rule 10(d) anticipates that the State's "objections or proposed amendments" to the appellant's statement of the evidence will enable the trial court to create a correct and accurate record. The provision of Rule 10(f) that "any difference ... as to whether the record truly discloses what occurred in the trial court" shall be submitted to and settled by the trial court contemplates this same result. Reduced to its simplest terms, the facts are that, if Harris is entitled to a record of the 1978 coram nobis hearing and a record of that hearing cannot be reconstructed, then Harris is at least entitled to a new trial.
We do not sanction the Attorney General's recommendation that on remand Harris be allowed to present evidence that the grand jury which returned the indictment against him was unconstitutionally selected. That relief is not authorized by Rule 10, which exists to allow the record on appeal to be conformed to what happened, not to what did not. See United States v. Smith, 493 F.2d 906, 907 (5th Cir.1974). As it applies to this case, the rule does not authorize the creation of a new record, but *862 merely the re-creation, or reconstruction, of a record of past proceedings.
This cause is remanded for an evidentiary hearing consistent with the dictates of this opinion. A record shall be made of that hearing and the trial court shall state its findings and conclusions in a written order. The transcript of the hearing and the court's written order shall then be made a part of the record on appeal in the case of Harris v. State, 1 Div. 695.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
On January 27, 1987, this court remanded this cause for an evidentiary hearing and directed the trial court to determine whether the defendant made a timely request for the transcription of a 1978 coram nobis proceeding concerning the composition of the grand jury which indicted him in 1975. We directed the trial court, if it determined that the defendant was not at fault in requesting a record of the coram nobis proceedings, to "provide Harris with a sufficient alternative to a transcript, grant him a new trial, ... or quash the indictment." See page 861 (citations omitted).
Before the trial court conducted a hearing pursuant to our remand, the United States Supreme Court, on June 22, 1987, decided the case of Sumner v. Shuman, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987), holding that a mandatory death sentence imposed upon a prison inmate who is convicted of murder while serving a life sentence without possibility of parole violates the Eighth and Fourteenth Amendments. Prior to the September 30, 1987, hearing held pursuant to our remand, defense counsel filed with the trial court a motion "for relief in light of the decision of the United States Supreme Court in Sumner v. Shuman."
At the September 30 remand hearing, the trial court did not rule on the timeliness of the defendant's request for a transcript or make any findings regarding the specific issues which were the subject of the remand from this court. Instead, the trial court entered the following order:
"The Court having conducted a hearing and the Defendant, Johnny Harris, being present and his attorneys being present, and the State being represented by its attorney, on the Motion for Relief in Light of the Unconstitutionality of Section 319, it is the determination that the sentence of death of Johnny Harris should be set aside. It is hereby ordered by the Court that Johnny Harris' sentence to death has been set aside and he is now returned to prison or penitentiary for such action by the prison authorities of Alabama as may be consistent with this order. Dated this 30th day of September, 1987."
After the court announced its order setting aside the defendant's death sentence, the following occurred:
"MS. BOURQUIN [Defense Counsel]: I gather that your opinion would be that there's no need to get to the question of the lost transcripts in light of the order that you just entered.
"MR. WASDEN [Assistant Attorney General]: That was the matter that the Court of Criminal Appeals directed us to consider here today, Your Honor. The only matter. Unless Mr. Harris' counsel is representing to the Court that his appeal of that conviction is going to be dropped then I would think that it would necessarily not be moot.
"MS. BOURQUIN: Well, I think it would be very difficult for us to make a decision at this point on whether or not we will appeal just the conviction and that we would be ready to proceed on the transcript questions if Your Honor was so inclined, but it may be that it makes as much sense for the defendant's counsel to have time to evaluate whether or not there would be an intent to continue with the appeal on the question of the conviction and the indictment before getting to the question of the lost transcript.
"THE COURT: As I stated I think that the Court is of the opinion that Johnny *863 Harris should not suffer the death penalty and he shall not suffer the death penalty, but that he will be returned to the prison authorities for their proper handling.
"Now, are you opposed to any of that? "MR. GUZY [Defense Counsel]: No, Your Honor, we would just like to preserve for the record our rights to go ahead and continue to raise challenges to the missing transcripts if it ever becomes necessary for us to challenge the indictment and conviction itself.
"THE COURT: I don't guess the State has any objection.
"MR. GUZY: Is that acceptable to Your Honor?
"MR. WASDEN: It's constitutional, Your Honor. No objection to it.
"THE COURT: Anything else by anybody?
"MR. GUZY: No, Your Honor. (End of proceedings.)"
The transcript of the September 30 hearing was then certified and transmitted to this court on return to remand.
The defendant argues that the trial court's September 30 order setting aside his death sentence is final, unappealable and not subject to review by this court on return to remand. He maintains that "[t]his Court's jurisdiction over this case at the time of its Remand Order was and is now limited to the missing transcript issues," and he argues that, "Jurisdiction with respect to the remainder of the case still resides in the Circuit Court, pending transcription and transmission of a complete record on appeal." Brief of Defendant in Support of Motion to Quash Return to Remand Order at 9. This court's jurisdiction, however, was invoked on July 26, 1983, when the notice of appeal was filed. See Rules 3(a)(2) and 4(b), A.R.A.P.; Johnson v. State, 421 So.2d 1306, 1314 (Ala.Cr. App.1982) (on rehearing). Once notice of appeal has been filed, the trial court retains jurisdiction only for limited purposes, see Ala.Code 1975, § 12-22-133; Johnson v. State, supra.
The State argues that the trial court's order setting aside the defendant's death sentence was improper because it was not within the specific mandate of this court's remand on the transcript issues. We find that although the trial court's order setting aside the defendant's sentence was outside the specific issue directed to be resolved on remand, it was not inconsistent with the directions from this court on remand, and, therefore, not improper. "On remand, the trial court may consider and decide any matters left open by the appellate court and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision." 5 Am.Jur.2d Appeal and Error § 992 at 419-20 (1962).
In the interest of judicial economy, however, we will not order a further remand for the resolution of the transcript issues for two reasons. First, given defense counsel's stated desire "to have time to evaluate whether or not there would be an intent to continue with the appeal on the question of the conviction and the indictment before getting to the question of the lost transcript," it is possible that such a resolution might not be necessary. Second, as the State points out, the Alabama Supreme Court has consented to answer a question of state law certified to it by the United States District Court for the Southern District of Alabama which will undoubtedly have a direct bearing on any re-indictment or retrial of the defendant, should such a retrial be necessary in the event of the unavailability of the transcripts in question.
The Alabama Supreme Court has agreed to answer the question, in Donald Thigpen v. Morris Thigpen, et al., No. 82-0456 (S.D.Ala.) (pending), whether in light of Sumner v. Shuman, supra, a life-term inmate convicted of murder and given a mandatory death sentence under the same statute as defendant was convicted and sentenced under, may be capitally resentenced according to the procedures outlined in Beck v. State, 396 So.2d 645 (Ala.1980), superceded on other grounds, Magwood v. *864 State, [Ms. 4 Div. 838, August 18, 1987] (Ala.Cr.App.1987), or must simply have his sentence reduced to life imprisonment.
We express no opinion regarding the order entered by the trial court on September 30, 1987. We direct that all further proceedings relating to the defendant's conviction and sentence pursuant to title 14, § 319 (including the transcripts of a coram nobis proceeding challenging the grand jury which indicted him) be held in abeyance pending the answer of the Alabama Supreme Court to the question certified in Donald Thigpen v. Morris Thigpen, et al., No. 82-0456 (S.D.Ala.) (pending).
OPINION EXTENDED;
CAUSE HELD IN ABEYANCE.
All Judges concur.

ON MOTION FOR REMEDY FOR UNAVAILABILITY OF TRANSCRIPTS
BOWEN, Judge.
This opinion is a sequel to our opinions of January 27, 1987, and December 8, 1987, involving Johnny Harris's conviction for murder and sentence to death. This matter is presently before this Court on Harris's "motion for remedy for unavailability of transcripts" pursuant to Rule 10, A.R.A.P.

I
In our opinion of January 27, 1987, this Court remanded this cause to the circuit court with instructions that an evidentiary hearing be held to determine whether Harris made a timely request for a transcript of the coram nobis proceedings, and, if that request were timely, that the circuit court either provide Harris with a sufficient alternative to a transcript, order a new trial, or quash the indictment. On remand, the circuit court did not comply with our request, but set aside Harris's sentence of death.
On December 8, 1987, this Court, on return to remand, entered an order directing that all further proceedings in this case be held in abeyance pending the answer of the Alabama Supreme Court to the certified question from the United States District Court for the Southern District of Alabama in the case of Donald Thigpen v. Morris Thigpen, Commissioner, Alabama Department of Corrections, et al. (Civil Action No. 82-0456-BH). At the hearing held in circuit court on September 30, 1987, in response to our order of January 27, 1987, the assistant attorney general recognized the Thigpen case as being "determinative of [some of] the issues" presented in Harris's case.
On May 10, 1989, the Alabama Supreme Court answered the certified question and held that Donald Thigpen's sentence to death under Title 14, § 319, Ala. Code 1940 (Recompiled 1958), for a conviction of murder in the first degree while serving a sentence of life imprisonment "[u]ndeniably ... must be vacated." Thigpen v. Thigpen, 541 So.2d 465 (Ala.1989). In reaching that result, the court relied on the opinion of the United States Supreme Court in Sumner v. Shuman, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987), which held that the Eighth and Fourteenth Amendments to the Constitution of the United States prohibit the imposition of a mandatory death sentence, without consideration of mitigating factors, on a prisoner who, while serving a life term for first degree murder, murders a fellow inmate.
In Thigpen, the Alabama Supreme Court held that "under the clear, absolute mandate of the Alabama constitution, Thigpen cannot be resentenced to death."
"Section 319 was the only death penalty law established and promulgated prior to Thigpen's offense and still in effect at that time. Because § 319 is unconstitutional [under Sumner], it cannot be `legally applied' to impose the death penalty on Thigpen. See art. 1, § 7, of the Alabama Constitution [`no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied']." Thigpen, 541 So.2d at 467.
In Thigpen, the Alabama Supreme Court also held that Thigpen could be resentenced to life imprisonment.
"At the time of Thigpen's offense and trial, § 314 defined the offense of first degree murder and §§ 318 and 319 specified *865 the available punishments therefor. Of those punishments, only the life sentence provided for in § 318 is still valid. Therefore, assuming Thigpen's challenge to his conviction is ultimately unsuccessful, an order similar to that issued in Hubbard [v. State, 290 Ala. 118, 274 So.2d 298 (1973)] could presumably be appropriately entered by a court having jurisdiction of the cause." Thigpen [on application for rehearing], 541 So.2d at 468.
Harris's sentence to death is unconstitutional and cannot stand even if his conviction for murder is later affirmed. We perceive no reason for delay. Therefore, on authority of Sumner and Thigpen, it is the order of this Court that the sentence of death imposed on defendant Harris on July 26, 1983, be vacated and reduced to a sentence of life imprisonment.

II
As noted in Part I of this opinion, the circuit court did not follow the instructions of this Court in its order of January 27, 1987, and make a determination of whether or not Harris filed a timely request for a transcript of his 1978 coram nobis proceedings. Despite that omission, we reject the Attorney General's recommendation that this Court again remand this case so that the circuit court can now make that determination.
Although the circuit court did not answer the question we posed, the parties did enter into a stipulation of the facts surrounding this issue. That stipulation appears in the record before this Court as follows:

"STIPULATION
"The following facts are hereby stipulated by and between undersigned counsel for Defendant/Appellant Johnny Harris and Plaintiff/Appellee State of Alabama. These facts relate to the issue of the timeliness of Mr. Harris's request for a copy of the now missing transcript of the coram nobis proceedings discussed in the decision issued on appeal in this case (1 Div. 695) by the Alabama Court of Criminal Appeals on January 27, 1987 on Mr. Harris's Motion for Remedy for Unavailability of Transcripts:
"1. The 1978 evidentiary hearing concerning the alleged underrepresentation of blacks and women in the pool from which the grand jury that indicted Mr. Harris was drawn, which was incorporated into the record of this case and which is now unavailable, was conducted in conjunction with Mr. Harris's petition for writ of error coram nobis following his 1975 conviction. This Court's decision on that petition was not filed until July 1, 1981three years after the hearing in question was conducted. The petition was granted in part and denied in part, resulting in the invalidation of Mr. Harris's 1975 conviction and death sentence. (See Exhibit A hereto).
"2. On August 3, 1981, the State of Alabama filed a Notice of Appeal from this Court's partial grant of Mr. Harris's petition for writ of error coram nobis. That appeal was dismissed on August 12, 1981. On August 26, 1981, the State filed an Application for Rehearing of the dismissal of that appeal. That Application was overruled on August 27, 1981. On September 9, 1981, the State filed a Petition for Writ of Certiorari with the Alabama Supreme Court. That Petition was pending until November 6, 1981, when it was denied. (See Exhibit B hereto).
"3. This Court [circuit court] first ordered that Mr. Harris be retried in an Order filed on December 28, 1981, which set the first pretrial hearingMr. Harris's arraignmentfor February 12, 1982. (See Exhibit C hereto).
"4. On February 12, 1982, at that first pretrial hearing, Mr. Harris filed a motion requesting a copy of a transcript of the coram nobis hearing. (See Exhibit D hereto).
"Stipulated this 30th day of September, 1987:"
This stipulation was signed by an assistant attorney general as "Counsel for Plaintiff/Appellee State of Alabama" and both "Counsel for Defendant/Appellant Johnny *866 Harris." The stipulation was not signed by the trial judge.
A primary consideration of this Court in remanding this case to the circuit court on January 27, 1987, for a determination of the timeliness of Harris's request for a transcript was the personal knowledge and participation of Supernumerary Circuit Court Judge Leigh M. Clark, to whom this case was assigned and who had presided over all of the judicial proceedings arising from the criminal prosecution of Harris since 1974. As we observed in that opinion, "It appears that the judge and Harris himself are the only participants who have been continually and consistently involved in the criminal prosecution and conviction of Harris for his alleged actions in the Atmore Prison riot of 1974." Harris, at p. 861.
Since our order on return to remand on December 8, 1987, Judge Clark has suffered a serious physical illness rendering his further participation in this cause, in any capacity and to any degree, whether as judge or witness, absolutely impossible. A remand of this cause for any reason would necessitate the appointing of a new circuit court judge. That judge would have no personal knowledge of the lengthy proceedings in this case. That judge's decision on the timeliness of Harris's request for a transcript would of necessity be based on the argument of the attorneys and on the records of the past proceedings. In this particular matter, he would be in no better position than this Court to decide the issues and would, in fact, be at a serious disadvantage.
Harris was convicted (for a second time) in 1983. Still, in 1989, on the direct appeal of that 1983 conviction, the case has yet to be submitted to this Court for a decision on the merits. Now, Harris insinuates that he may not wish to pursue this appeal. Appellant's brief filed May 2, 1989, pp. 6-7. The Attorney General argues that this Court should again remand this cause so that compliance can be had with our directions of January 27, 1987. Under the circumstances present, that would be a very slow, arduous, and difficult task for any judge unfamiliar with the tangled procedural history and present posture of this case. This case cries out for some degree of finality. Both the State, represented by the Attorney General, and Harris himself deserve some decision on the merits as soon as reason and justice will permit. Therefore, based on all of the above circumstances and especially on the inability of the original trial judge to shed any light on the issues presented, this Court is of the opinion that this matter should not be remanded for an evidentiary hearing in the circuit court. Instead, in fairness to all the parties, this Court hereby orders that briefs be filed on the issues of the timeliness of Harris's request for a copy of the transcript of the coram nobis proceedings, and the remedy available to Harris if this Court should find that his request was timely. Harris shall file his brief within 21 days from the date of this opinion. The Attorney General shall file his brief within 21 days from the date Harris files his brief with this Court.
Done this the 16th day of June 1989.
Order issued.
All Judges concur.